The STATE of Ohio, Appellee,

v.

ADKINS, Appellant.

[Cite as *State v. Adkins* (1992), 80 Ohio App.3d 211.]

Court of Appeals of Ohio,
Athens County.

No. 1472.

Decided May 21, 1992.

*K. Robert Toy,* Assistant Prosecuting Attorney, for appellee.

*Richard M. Wallar,* for appellant.

*Per Curiam.*

This is an appeal from a judgment of conviction and sentence entered by the Athens County Common Pleas Court finding Tommy Adkins, Jr., defendant below and appellant herein, guilty of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(6), a second degree felony, and R.C. 2925.03(A)(1), a third degree felony.

Appellant assigns the following errors:

First Assignment of Error:

"A search warrant issuing authority is not 'neutral and detached' when he has a pecuniary interest in the premises being searched and when he is a participant in the initial preparatory stages of obtaining a search warrant."

Second Assignment of Error:

"The defendant, in a criminal case, is denied a fair trial and due process of law where the prosecuting attorney blatantly violates the rules of discovery."

Third Assignment of Error:

"The state violated the defendant's constitutional right to counsel by sending its agent to converse with the defendant after he was under indictment and when he was represented by counsel."

Fourth Assignment of Error:

"The defendant could only be convicted of one of the related offenses since both offenses of aggravated trafficking in drugs arose from the same drugs, conduct and circumstances."

Fifth Assignment of Error:

"The trial court erred in failing to allow the defendant to call all necessary witnesses."

On Friday afternoon, April 27, 1990, Sandy Bortle, the manager of the Amerihost Inn in Athens, Ohio, suspected appellant was engaging in illegal drug activities on the premises. Bortle testified the inn was full that weekend with its first big conference, and, consequently, she wanted to make sure appellant's activities did not jeopardize the safety of her guests and her employees, and did not jeopardize the reputation of her business. When Bortle called the Athens Police Department, she learned they were too busy to help. When Bortle attempted to contact her attorney, she learned he was out of town.

Knowing she had only two workday hours left to resolve the situation before the weekend, Bortle next called an acquaintance, Athens County Common Pleas Court Judge L. Alan Goldsberry, for advice. Bortle testified she believed Judge Goldsberry attempted to transfer her call to the Athens County Sheriff's Department, but the transfer failed. Bortle did not know the transfer failed until her other telephone line rang. At that point she switched to that line and talked with the sheriff's department.

At the time Bortle called Judge Goldsberry, she knew Judge Goldsberry owned one of one hundred limited partnership shares in the Amerihost Inn. The limited partners together own a seventy percent interest in the inn. Judge Goldsberry paid $6,500 for his seven tenths of one percent investment in the business. Bortle testified in pertinent part as follows:

" * * * I didn't call the Judge because of his financial interest. I called because I was looking for someone to give me some advice. * * * "

The sheriff's department and the police department joined together to investigate appellant's activities that night. At approximately midnight, Police Officer Clyde Beasley obtained a search warrant from Judge Goldsberry. Beasley testified he usually goes to Judge Goldsberry for search warrants. The search warrant affidavit sought marijuana, cocaine and drug paraphernalia, and provided in pertinent part as follows:

"The facts tending to establish that such property is there located are as follows: On 4–27–90 the management, Amerihost Inn, called the Athens Police department and advised that the person who had room 201 rented was conducting business of a suspicious nature and believed they were trafficking drugs due to the volume of people coming and going from this room. The management also advised that Tom Adkins had the room rented and this was not the first time. Adkins had make [sic] comments to employees which lead [sic] them to believe they were using drugs in the rooms of the Amerihost Inn. At this time officer R. Filar was assigned to surveil the room a/201 from 202. He observed people coming and going from room 201.

"I contacted a subject who is known to be a reliable citizen and a business person in the community and one who[m] I have conducted business with told me that they have seen marijuana and cocaine at room 201 the amerihost inn located at 20 Home Street within the past 48 hours. This person advised that drugs were being sold and that they observed sales of contraband drugs at room 201, Amerihost Inn.

"This source of information must remain anonymous as they have reason to believe they may be in great danger of death or serious harm to their person or family."

The officers conducted the search on April 28, 1990 at approximately 12:30 a.m. Seven people including appellant, Gary George and Tony Cooper were in the room when the officers entered. The officers found marijuana, cocaine and drug paraphernalia about the room. The officers also found $1,775 cash in appellant's wallet.

Tony Cooper testified appellant borrowed Cooper's wife's car on April 25, 1990 in order "to go up north to get some coke." Appellant returned with cocaine, and gave Cooper and his wife cocaine in exchange for the loan of the car. Both Tony Cooper and Gary George testified that: (1) appellant was responsible for the cocaine found in the room; (2) appellant used the cocaine; (3) appellant divided the cocaine into lines for snorting; (4) appellant offered doses of the cocaine to all in the room; and (5) every person in the room snorted four or five lines of cocaine that evening before the search.

Zanesville Police Officer Richard Robson testified that while he was working undercover with a confidential informant on June 27, 1990 at a bar in Athens County, appellant came up and told the informant about the April 28, 1990 search. Appellant bragged that the officers did not find all of his cocaine, that he had a "glacier" left. Officer Robson testified he did not target appellant for an investigation that evening, and further testified that at the time of the incident he did not know the circumstances surrounding appellant's arrest.

The jury found appellant guilty of possession of cocaine in violation of R.C. 2925.03(A)(6), a second degree felony, and guilty of trafficking in cocaine in violation of R.C. 2925.03(A)(1), a third degree felony.[1] The court sentenced appellant to a five-to-fifteen-year term in the Orient Reception Center, including three years of actual incarceration, on the possession conviction. The court sentenced appellant to a two-year definite term in the Orient Reception Center on the trafficking conviction, and ordered the two terms to be served consecutively. The court fined appellant $5,000 and $2,500 respectively for the convictions, and ordered the $1,775 seized from his wallet to be forfeited to law enforcement agencies.

Appellant filed a timely notice of appeal.

## I

In his first assignment of error, appellant contends Judge L. Alan Goldsberry was not a "neutral and detached magistrate or judicial officer" when he issued the search warrant. See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Appellant reasons that Judge Goldsberry's seven-tenths-of-one-percent limited investment interest in the inn where the search occurred prevented him from being neutral and detached. Appellant further asserts that Judge Goldsberry's telephone contact with Sandy Bortle prior to the issuance of the search warrant must result in a determination that Judge Goldsberry acted as an "advisor and counsellor to Sandy Bortle." We disagree with appellant's contentions.

Appellant cites Ohio Code of Judicial Conduct, Canon 3(C)(1), which states:

"A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"* * *

"(c) he knows that he * * * has a substantial financial interest in the subject matter in controversy * * * or any other interest that could be substantially affected by the outcome of the proceeding[.]"

In the case *sub judice*, we do not believe Judge Goldsberry's pecuniary interest in the inn was substantial, and we do not believe his interest could have been substantially affected by the outcome of the search authorized by

---

1. R.C. 2925.03(A)(1) and (A)(6) provide:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount.

"* * *

"(6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount."

the warrant. See, generally, *Conally v. Georgia* (1977), 429 U.S. 245, 97 S.Ct. 546, 50 L.Ed.2d 444; *Tumey v. Ohio* (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749. The interest possessed by Judge Goldsberry could only be characterized as insignificant and insubstantial. Additionally, we question whether the inn was "the subject matter in controversy" in the search warrant proceeding. The search warrant sought marijuana and cocaine, not the inn.

■ Further, we find no evidence in the record indicating Judge Goldsberry acted as Bortle's "advisor or counsellor" or improperly engaged in law enforcement activities. A review of the record indicates that after Judge Goldsberry received Bortle's telephone call and learned of her desire to contact the appropriate law enforcement authorities, Judge Goldsberry simply attempted to transfer Bortle's call to the Athens County Sheriff's Department. Judge Goldsberry did not participate in the police investigation in any fashion. Clearly, Judge Goldsberry merely responded to the legitimate requests of law enforcement officials who presented him with evidence of wrongdoing and requested that he issue a search warrant. See *Coolidge, supra; LoJi Sales v. New York* (1979), 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920.

Additionally, we note that appellant never questioned whether probable cause existed to support the issuance of the search warrant. See *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## II

■ In his second assignment of error, appellant complains the prosecutor violated the rules of discovery. In particular, appellant complains the prosecutor waited until five days before trial to give appellant the name of one witness, Officer Richard Robson, and a supplemental police report about the statement appellant made in Officer Robson's presence. Appellant also complains the prosecutor failed to disclose a fingerprint report that appellant says "tends to indicate" fingerprints of other individuals were on property seized in the search.

Appellant argues the prosecutor's misconduct is blatant in light of the fact that the prosecutor's initial discovery response denied the existence of any fingerprint reports, yet Officer Beasley testified he delivered the fingerprint report to the prosecutor five days prior to the response. Appellant notes Officer Robson's name, the statement appellant made in Officer Robson's presence, and the fingerprint report were all available prior to the August 10, 1990 hearing on appellant's motion to compel discovery. Appellant did not

learn about the fingerprint report until the day of trial and did not learn about Officer Robson until five days before trial.

Lastly, appellant complains the court failed to grant him a continuance in order to enable him to subpoena Lori Hart, the person appellant believes was the confidential informant present with Officer Robson when appellant made his incriminatory statement. The court denied the continuance, stating that appellant knew the name of the informant before the trial began, and therefore appellant should have subpoenaed the informant earlier. Appellant argues that until five days before trial he was unaware Officer Robson would be called as a witness, and until the trial he was unaware the court would permit Officer Robson's testimony. Thus, appellant argues, until the trial he did not know Lori Hart would be needed to rebut Officer Robson's testimony.

Appellee argues appellant failed to request a continuance during the motion hearings held at 9 a.m. on October 31, 1990 just before the trial began. Appellant waited until the conclusion of that day to complain about the late discovery. Appellee additionally argues that although appellant complains he was unable to subpoena Lori Hart, appellant made no proffer concerning her testimony.

Appellee notes the court did sanction appellee for failing to disclose the fingerprint report by forbidding appellee to present the report into evidence. Appellee notes that although appellant contends the report would help his case, when appellee offered to admit the report into evidence, and offered to stipulate to the accuracy of the report, appellant declined the offer.

■ Crim.R. 16(E)(3) provides:

"Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence that material not disclosed, or it may make such other order as it deems just under the circumstances."

The rule does not require the court to grant continuances or to prohibit the introduction of certain evidence. The rule grants the court discretion to impose whatever sanction it deems just under the circumstances. *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Finnerty* (1989), 45 Ohio St.3d 104, 543 N.E.2d 1233. In *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167, the court followed established law on what constitutes an abuse of discretion:

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or

unconscionable." See, also, *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894, and *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144.

In *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, syllabus, the court set forth a test for determining whether a trial court has abused its discretion by admitting evidence of an undisclosed oral statement. If the record does not reveal that the prosecutor willfully failed to disclose the statement, that foreknowledge of the statement would have benefitted the accused, or that admission of the statement caused the accused prejudice, then the trial court did not abuse its discretion by admitting the evidence. See, also, *Wiles, supra; State v. Parker* (1990), 53 Ohio St.3d 82, 558 N.E.2d 1164.

In the case *sub judice*, we find no abuse of discretion. Although the prosecutor offered to stipulate to the accuracy of the fingerprint report, appellant declined the offer. Although appellant knew five days in advance of trial that Officer Robson might be called to testify, appellant made no attempt to subpoena or locate Lori Hart as a rebuttal witness until the second day of trial. Although the prosecutor should have disclosed Officer Robson's name prior to five days before trial, we do not believe the court's decision to allow Officer Robson to testify was "unreasonable, arbitrary, or unconscionable."

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

### III

In his third assignment of error, appellant asserts the state violated his constitutional right to counsel by sending its agent, Officer Robson, to converse with appellant after the grand jury indicted appellant and after appellant obtained counsel. We find no evidence to support the facts appellant alleges in his assertion.

We agree with appellant that the Sixth Amendment right to counsel attaches at the initiation of adversary judicial criminal proceedings, whether by formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois* (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; *State v. Barnett* (1990), 67 Ohio App.3d 760, 588 N.E.2d 887. Once an accused's Sixth Amendment right to counsel attaches, the state may not knowingly circumvent that right in order to obtain incriminating evidence against him. *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246.

In the instant case, however, we find no evidence that the state sent Officer Robson to converse with appellant. Further, the record contains no evidence

that Officer Robson conversed with appellant. Officer Robson testified that when he was working undercover and sitting in a bar next to a confidential informant, appellant approached the confidential informant and began a conversation with the informant. Officer Robson did not question appellant. Officer Robson did not converse with appellant. Officer Robson merely sat passively near appellant and listened to appellant's conversation with the confidential informant. We find nothing in the record to support appellant's assertion that the state's agent deliberately elicited incriminating statements from appellant. See *Massiah, supra; United States v. Henry* (1980), 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115; *Kuhlmann v. Wilson* (1986), 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364; and *Maine v. Moulton* (1985), 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481.

Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

## IV

■ In his fourth assignment of error, appellant asserts he can be convicted of only one of the two R.C. 2925.03(A) offenses because both offenses arose from the same conduct and circumstances. Appellant contends his conduct constitutes two allied offenses of similar import and, pursuant to R.C. 2941.25, the court may sentence him on only one offense.[2]

In *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus, the court announced a two-tiered test for determining whether two or more crimes are allied offenses of similar import. The court wrote:

"Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes

---

2. R.C. 2941.25 applies where one act committed by a defendant can be construed to simultaneously constitute two or more offenses:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. * * * ''

In *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247, syllabus, the court held that where an accused is charged with sale and possession of the same type and quantity of drugs, he can be convicted of only one offense. The court wrote:

"Where a defendant is charged with possession for sale of a narcotic drug in violation of R.C. 3719.20(A), and with the sale of a narcotic drug in violation of R.C. 3719.20(B), and the facts demonstrate that both charges are based upon a single sale and involve the same parties and the same type and quantity of drugs, *and it is not proven that the defendant possessed a quantity of any type of narcotic drug in excess of the amount sold,* the defendant may be indicted for both offenses but may be convicted of only one. R.C. 2941.25(A), applied." (Emphasis added.)

The court, by implication, held that if an accused possessed a quantity of drugs in excess of the amount sold, he could be convicted of both offenses. See, also, *State v. Jennings* (1987), 42 Ohio App.3d 179, 537 N.E.2d 685.

Appellant argues the evidence demonstrates his sale of drugs involved the same drugs he possessed, and, therefore, he did not commit the two offenses separately or with a separate animus. We disagree with appellant's assessment of the evidence.

Initially, we note R.C. 2925.01(A) incorporates the R.C. 3719.01(EE) definition of "sale" into the drug statutes. This definition is broader than the common dictionary definition of "sale." R.C. 3719.01(EE) provides:

" 'Sale' includes delivery, barter, exchange, transfer, gift, or offer thereof, and each such transaction made by any person, whether as a principal, proprietor, agent, servant, or employee."

In the case *sub judice,* the evidence demonstrates appellant sold cocaine when he gave cocaine to individuals in the room. The evidence also demonstrates appellant did not sell all of the cocaine he possessed. The officers discovered the excess of the cocaine when they conducted the search. Consequently, appellant may be convicted of both selling and possessing cocaine.

Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

## V

In his fifth assignment of error, appellant asserts the trial court erred by failing to permit him to call all necessary witnesses. In particular,

appellant asserts the court should have granted him a continuance to enable him to subpoena Jeff Roth and Lisa Roth.[3]

Appellee argues that although four months prior to trial appellant knew the Roths were potential witnesses, appellant did not subpoena them until two weeks prior to trial. Appellee further argues appellant failed to proffer into the record what the Roths might have said on the witness stand. Appellee contends the Roths' testimony would have severely damaged appellant's case by showing appellant sold them marijuana on the evening in question.

In *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, syllabus, the court held:

"The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. * * * " See, also, *State v. Claytor* (1991), 61 Ohio St.3d 234, 240, 574 N.E.2d 472, 478.

We again note the term "abuse of discretion" connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. See *Montgomery, Adams,* and *Moreland, supra.*

In the case *sub judice,* we find the court's decision denying appellant a continuance was not unreasonable, arbitrary, or unconscionable. The record is devoid of evidence or argument that the Roths' testimony is critical to appellant's case.

Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

*Judgment affirmed.*

HARSHA and PETER B. ABELE, JJ., concur.

GREY, J., dissents.

GREY, Judge, dissenting.

I respectfully dissent. I agree with the majority's disposition of the other assignments of error, but would sustain assignment of error four and remand for resentencing.

This question of one or two crimes of similar import has plagued the courts, but there is a rational pattern in the decisions. The question—Is this one crime or two?—is answered much the same way we decide if anything is the same or different. Things are different if they are different in type, in place,

---

**3.** In the last sentence of his argument, appellant asserts the court should have granted him a continuance to enable him to subpoena Lori Hart. We have dealt with this issue under appellant's second assignment of error.

in time, and in number. Things that are the same in type, place, time and number are the same.

For example, this court held in *State v. Rees* (Nov. 24, 1989), Gallia App. No. 88 CA 17, unreported, 1989 WL 145614, that different types of drugs constituted different offenses. Likewise in *State v. Delfino* (1986), 22 Ohio St.3d 270, 22 OBR 443, 490 N.E.2d 884, the Supreme Court held that possessing marijuana and cocaine were separate crimes because the drugs were different in type. In *State v. Barnes* (1981), 68 Ohio St.2d 13, 22 O.O.3d 126, 427 N.E.2d 517, the court held that different types of rape, oral and vaginal, were separate crimes. Difference in type is a major determinant.

Place is another determinant. Rape and kidnapping often involve a similar-import question, and place seems to be the major criterion for deciding if it is one crime or two. In *State v. Ware* (1980), 63 Ohio St.2d 84, 17 O.O.3d 51, 406 N.E.2d 1112, rape and kidnapping were held to be two crimes because the defendant used deception to lure the victim from the place where she was to his home. In *State v. Muenick* (1985), 26 Ohio App.3d 3, 26 OBR 171, 498 N.E.2d 171, the defendant was sentenced for robbery and kidnapping because he transported the victim to a place ten miles away.

Time is another criterion. Crimes separate in time are separate crimes. In *State v. Henry* (1987), 37 Ohio App.3d 3, 523 N.E.2d 877, the restraint was not brief and incidental to the rape, but lasted two and a half hours. Forging a check and then, at a later date, uttering it are separate crimes, *State v. Hunter* (1983), 12 Ohio App.3d 75, 12 OBR 273, 466 N.E.2d 183, because they are separate in time.

Number is a real problem. Robbing three guys in a bar at the same time is one offense, *State v. Hughley* (1984), 20 Ohio App.3d 77, 20 OBR 97, 484 N.E.2d 758, but one accident which causes multiple deaths results in multiple convictions for vehicular homicide, *State v. Stimson* (1985), 28 Ohio App.3d 69, 28 OBR 110, 502 N.E.2d 231.

These criteria, type, place, time, and number were, I believe, the point the Supreme Court was trying to make in *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247, when it spoke of charges based on a *single* (one time) sale and involved the same parties (one place) and the same type (one kind) and quantity (one amount) of drugs. The facts in this case show that Adkins set out a dish of cocaine for the people at the party to help themselves. There was also cocaine in a vial and in little plastic bags.

As noted in the majority opinion, it was this act of giving out the cocaine which constituted the offense. He would have been guilty if no one had taken him up on his offer and used the stuff. The drugs which were used to prove the charge of selling were the same type, at the same time, at the same place,

and in the same quantity as the drugs used to prove the possession charge. One might argue, sophistically, that since the people in the hotel room had probably snorted some of what he laid out, the quantity was different. But what was snorted was not used to prove the charge. It was only what was left when the police searched the room upon which the jury could infer that a sale, or gift, had taken place. Simply put, the cocaine was one: one in kind, time, place, and number.

Perhaps the best indication of what might constitute a separate offense was Adkins' boast to the undercover agent that the search of the hotel room did not find the "glacier" of cocaine he had. If that other cocaine had been found, Adkins would have been guilty of a separate offense. But under the *Roberts* standard, where "it is not proven that the defendant possessed a *quantity* of any *type* of narcotic drug in excess of the amount sold the defendant may be indicted for both offenses but may be convicted of only one." *Id.*, 62 Ohio St.2d at 170, 16 O.O.3d at 203, 405 N.E.2d at 249.

The language in *Roberts* about an excess quantity comes from the particular facts in that case. The police had made several buys from him at different locations and had good reason to believe that Roberts was guilty of both possession and possession for sale, but they could not prove both crimes. As the court pointed out, at 171, 16 O.O.3d at 202, 405 N.E.2d at 249, since both convictions "were based upon a single sale of heroin and upon identical evidence, it was impermissible under R.C. 2941.25(A) to convict the defendant for both offenses."

In this case we have exactly what happened in *Roberts*, but the exact opposite result. The evidence used to prove the sale charge was the identical evidence used to prove the possession charge. Roberts was convicted of one offense, but Adkins was convicted of two. This is error.

I can find no opinions explicitly using this type, time, place, and number analysis. It is, after all, more the language of logic and epistemology than of the law. But the problem of identity is the same in either area. If something is different from another thing, it can only be different in time or place, etc. It can only be different in terms by which we know things.

I will concede there is not a lot of consistency in the opinions on this issue. The main criterion in determining whether it is one crime or two seems to be the egregiousness of the act (*e.g.*, three robbery victims is one offense, while three auto deaths are three separate offenses), but this court has a duty to follow the statutes.

If R.C. 2941.25 says that crimes of similar import shall be construed as one offense, and if R.C. 2901.04 says the statutes shall be construed strictly against the state and liberally in favor of the accused, then it is our duty to do

just that. The majority opinion construes the facts and the statutes in this case and concludes there is perhaps some basis for affirming the result here. This is not unreasonable. However, one cannot strictly construe against the state and liberally in favor of the defendant and still have a reasonable basis for affirmance.

Based on the foregoing, I would hold that sentencing appellant on both charges is improper, would reverse on those grounds and remand solely for resentencing.

Thus, I dissent.