Defendant-appellant herein, Dontravio Singleton, appeals from the verdict of the trial court wherein he was found guilty of one count of murder in violation of R.C. 2903.02 and one count of aggravated robbery in violation of R.C. 2911.01.
Appellant was indicted by the Cuyahoga County Grand Jury on December 16, 1998 on one count of murder in violation of R.C.2903.02 and one count of aggravated robbery in violation of R.C.2911.01. At his December 21, 1998 arraignment, the appellant entered a plea of not guilty. Trial commenced on March 22, 1999. The trial court, at the request of appellant's trial attorney, instructed the jury that they could find the appellant guilty of involuntary manslaughter a lesser included offense of murder. On March 26, 1999, the jury returned a guilty count on both the murder and the aggravated robbery counts contained in the indictment. On March 29, 1999, the trial court sentenced the appellant to a term of fifteen years to life on the murder count and three years on the aggravated robbery count, the two terms to be served consecutively.
The appellant timely filed the within appeal from the verdict of the jury and assigns a total of four assignments of error. For the reasons adduced below, we affirm the appellant's convictions on all counts.
 The victim in the instant case was Joseph Ryals (hereinafter Ryals). Ryals was twenty-two years old at the time of the incident and was employed as a steelworker. On the night in question, November 6, 1998, Ryals had been playing cards inside his brother's house at 1933 W. 58th Street, near Bridge Avenue, in Cleveland with his brother, his brother's girlfriend and his brother's girlfriend's stepfather when he decided to walk to the corner store to buy some beer at approximately 10:00 p.m. Ryals borrowed $2.00 from his brother to finance the purchase. On his way to the store, which was located right down the street from his house, Ryals was violently attacked without provocation by two assailants. After being punched several times about the head and face, Ryals fell to the ground unconscious. While laying motionless on the ground, Ryals was violently kicked and stomped in the head repeatedly by his assailants. Eventually a passing motorist was able to scare off the attackers (but not before they rifled through his pockets and stole his wallet) and summoned for help. Ryals never regained consciousness after the commencement of the attack and was declared dead upon arrival at Metrohealth Medical Center. The Cuyahoga County Coroner's office performed an autopsy of the body and declared that the cause of death was fatal cerebral concussion due to blunt impacts to head.
In addition to the passing motorist, two other witnesses, a pedestrian and a teenage girl babysitting at a nearby residence, witnessed the majority of the attack. All of the witnesses stated that the two assailants, one wearing a bright yellow winter coat and one wearing a dark coat, had violently kicked and stomped the victim after knocking him to the ground. Based upon their interviews with various neighbors and members of the community, the police were soon able to learn the identity of the perpetrator in the distinctive bright yellow jacket, Darren Ray (hereinafter Ray or Darren), a fifteen-year-old who lived in the neighborhood.
Eleven-year-old Nicole Zylko and her thirteen-year-old sister Jennifer Ellis, who lived down the street from the crime scene and were interviewed the day after the murder, both testified that on the night in question they saw two individuals, one whom they both recognized as Darren Ray, rifling through a wallet before discarding it in the girls' yard. The wallet, which later was confirmed to belong to Ryals, was found the next day along with some of Ryals' identification in the girls' yard by their mother, who turned it over to the police.
The afternoon after the day of the murder Ray was apprehended on his girlfriend's porch in his trademark yellow jacket. After initially denying his involvement to investigators, Ray confessed and immediately thereafter implicated the appellant as his co-conspirator. According to Ray, the two had taken a bus from downtown to the intersection of Lorain Avenue and W. 65th Street after a night of drinking cheap wine on Cleveland's east side. From the point where they exited the bus, the pair began to walk towards Ray's house at 6005 Bridge Avenue. While walking northbound on W. 58th Street on the west side of the street, Ray announced to the appellant that he was going to swing on the next person they saw. Shortly thereafter the two spotted Ryals walking in the same direction on the east side of the street. Ray called out to Ryals, whom Ray testified that he knew lightweight from the neighborhood. When Ryals responded and came across the street, Ray began to ask him if he knew where they could buy some weed, but then proceeded to punch Ryals around the head and shoulder area before Ryals could answer the question. According to Ray's testimony at trial, both he and the appellant hit Ryals several more times and then kicked and stomped him repeatedly while he lay on the ground. Ray described the manner which they kicked Ryals as being similar to the way in which you would kick a football.
Ray agreed to plea guilty to murder in juvenile court and to provide the above outlined testimony against the appellant in return for the state foregoing proceedings to attempt to have him bound over for trial as an adult.
In addition to Ray's testimony, the state presented numerous other witnesses at trial. Thomas Barr, the motorist who scared off the appellants, testified that he observed two black males continuously punching and then kicking a lone white male in the face in the middle of the intersection at W. 58th Street and Wakefield Avenue. Barr stated that at no time did the victim ever retaliate or even show signs of movement. Barr further stated that the assailants continued the beating even after he yelled for them to stop, but that they ignored his pleas until he turned his car around and drove it right at them.
Demetrius Roberts, who was the pedestrian who witnessed the beating, was not contacted by the police until a number of days after the incident. Roberts stated at trial that he witnessed an individual he knew to be Darren Ray (who went by the moniker Little Dee in the neighborhood) and another individual in a dark jacket continuously kick a man who laid motionless on the ground. After the assailants fled, Roberts got a glimpse of Ryals' face, whom he also recognized from the neighborhood.
Sabrina DeJesus, sixteen years old, testified that she was babysitting for a family who lived on the corner of W. 58th Street and Wakefield Avenue when she heard yelling. Sabrina looked out the window and observed two black men standing over a man with blond hair in the intersection. According to Sabrina, the two assailants kicked the man on the ground for two or three minutes, took his wallet and then ran off when a car approached them. Sabrina called the mother of the children she was babysitting, who was very close to home, who then summoned police and took Ryals's pulse while waiting for the ambulance to arrive.
Cleveland Homicide Detective Sahir Hasan testified that Ray was initially very cocky and hostile when questioned, but then quickly confessed and implicated the appellant after being confronted with the statements provided by sisters Nicole Zylko and Jennifer Ellis, who recognized Ray from the neighborhood and saw him discard Ryals's wallet.
Ray's mother, Annie Ray, testified that her son had told her that he and the appellant (whom was known to Ms. Ray as Donnie) were going to Tower City to see a movie on the night in question. Ms. Ray further testified that the appellant called her home the evening after her son had been detained by the police and told her that he and Darren had been together at the movies all night and that he had walked with Darren from the bus stop to the Ray home on Bridge Avenue on the evening in question and that nothing out of the ordinary had happened. Ms. Ray testified that she felt that the stories of the two boys matched up too perfectly and that she became suspicious.
Sixteen-year-old Lakesha Brown, who was friends with Ray and had dated the appellant off and on around the time of the accident, testified that the appellant initially denied any connection to the beating, but later admitted that he was involved and admitted that he had hit Ryals. Brown also testified that the appellant had previously sported a hair style know as corn rows, but that he had switched to a fade some four or five months prior to her testimony of March 24, 1999. The appellant stated that she didn't think that the appellant still had corn rows on the night of the murder, but was not sure.
The appellant presented no witnesses on his behalf.
The appellant's first assignment of error states:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR IN ADMITTING THE TESTIMONY OF ANNIE RAY EVEN THOUGH THE PROSECUTOR FAILED TO DISCLOSE HER NAME AS A POTENTIAL WITNESS IN RESPONSE TO THE DISCOVERY REQUEST OF APPELLANT'S TRIAL COUNSEL.
The parties agree that the name of Annie Ray was inadvertently left off the witness list provided to defense counsel at trial and that defense counsel did not learn that she would be called as a witness until the day of the trial. After defense counsel stated his objection to the testimony of Ms. Ray, the trial judge conferred with all counsel at side bar in order to learn the facts of the apparent oversight. The prosecutor explained that the failure to include Ms. Ray's name on the witness list was a mistake made by his office. The trial judge deferred ruling on the objection and asked that the state call another witness. The trial judge then told the attorneys that defense counsel would be permitted to interview the witness over the lunch hour to learn the nature of her testimony and could then supplement his objection when the court reconvened after lunch. Prior to the commencement of the afternoon session, the trial judge inquired of defense counsel whether he had enough time to interview Ms. Ray. Counsel stated that I had plenty of time. I fully questioned her so I was provided ample opportunity, Judge. Defense counsel then indicated that he still objected to Ms. Ray's testimony because he believed it would be prejudicial. After allowing both the prosecutor and defense counsel to outline the expected testimony of Ms. Ray in order to gauge whether it would be prejudicial to the defendant, the trial court overruled defense counsel's objection and permitted Ms. Ray to testify. In making its ruling the trial court cited Criminal Rule 16 and a number of reported and unreported cases dealing with this issue.
In State v. Czajka (1995), 101 Ohio App.3d 564, 572,656 N.E.2d 9, this court stated:
 The purpose of discovery rules is to protect against the surprise testimony of an undisclosed witness to the prejudice of the accused. See State v. Heinish (1990), 50 Ohio St.3d 231, 553 N.E.2d 1026; Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138. In the event the rules of discovery are violated, Crim.R. 16(E)(3) grants the trial court discretion to impose whatever sanction on the noncomplying party it deems just under the circumstances. State v. Adkins (1992), 80 Ohio App.3d 211, 608 N.E.2d 1152; State v. Wiles (1991), 59 Ohio St.3d 71, 571 N.E.2d 97. An abuse of discretion implies more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.
 The Ohio Supreme Court has held a trial court does not abuse its discretion by permitting the testimony of an undisclosed witness if it can be shown that the failure to provide discovery was not willful, that fore knowledge of the statement would not have benefitted the defendant in the preparation of the defense, and that the defendant was not prejudiced by the admission of the evidence. See State v. Heinish, supra; State v. Parson (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689.
In the case sub judice, the appellant was certainly aware that Ms. Ray was a person with knowledge of the facts of the case, as the appellant knew that Darren Ray lived at his mother's house and needed to be home by curfew (10:30 p.m.) on the night in question and that the appellant had taken upon himself to call Ms. Ray to corroborate his alibi with Darren's. The trial court admittedly gave defense counsel plenty of time to interview Ms. Ray prior to her testimony and expressed a willingness to provide more time if defense counsel believed it necessary. The record shows that the defense counsel was able to conduct an effective cross-examination of the witness. The effect of Ms. Ray's testimony was to corroborate the testimony of Lakesha Brown and Darren Ray that the appellant and Darren Ray had corroborated on an alibi to explain their whereabouts on the night in question. Defense counsel was unable to articulate any prejudice which had inured to the detriment of his client from counsel's inability to question Ms. Ray at an earlier date.
We thus find that the trial court did not abuse its discretion in permitting the testimony of Annie Ray. Appellant's first assignment of error is overruled.
The appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S TRIAL COUNSEL'S RULE 29 MOTION TO REDUCE THE MURDER CHARGE AGAINST THE APPELLANT TO INVOLUNTARY MANSLAUGHTER.
Appellant contends in this assignment of error that the state produced no evidence that the appellant purposefully caused the death of Joseph Ryals.
Under Crim.R. 29, a trial court shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. A motion for judgment of acquittal under Crim.R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt. State v. Apanovitch (1987), 33 Ohio St.3d 18, [33 Ohio St.3d 19] 23.
Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), Cuyahoga App. No. 65356, unreported. In State v. Jenks (1991), 61 Ohio St.3d 259,273, the Ohio State Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence in support of a conviction:
 [T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Eley [(1978), 56 Ohio St.2d 169].
See, also, Jackson v. Virginia (1979), 443 U.S. 307; 99 S.Ct 2781;61 L.Ed.2d 560.
In the instant case three witnesses testified that they witnessed the appellant violently kick and stomp the victim on and about the head, as well as on other parts of his body, for an extended period of time. One witness stated that she saw the two assailants administer the beating for two to three minutes. It is uncontroverted that the victim was unconscious during most of the period he was being savagely attacked. Ray testified that he and the appellant were kicking the victim's head in the fashion in which a person would kick a football. Intent to kill on the part of the appellant could certainly have been inferred by the jury in this case from the duration and the intensity of the bludgeoning of the victim long after he lost consciousness. The jury was given the choice of convicting the appellant of murder or involuntary manslaughter.
A person is presumed to intend the natural and probable consequences of his voluntary actions. State v. Carter (1995),72 Ohio St.3d 545, 555. The natural and probable consequence of repeatedly kicking and stomping an unconscious person on and about the head is a fatal cerebral concussion. Therefore, this assignment of error is overruled.
The appellant's third assignment of error states:
 III. THE JURY VERDICT AGAINST THE APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT ALL OF THE ESSENTIAL ELEMENTS OF THE CRIMES OF MURDER AND AGGRAVATED ROBBERY.
R.C. 2903.02 states in relevant part:
 (A) No person shall purposefully cause the death of another or the unlawful termination of another's pregnancy.
 (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree.
* * *
(D) Whoever violates this section is guilty of murder.
R.C. 2911.01 states in relevant part:
 (A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
* * *
 (3) Inflict, or attempt to inflict, serious physical harm on another.
Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial. State ex rel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where the Court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence.
 Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Hence, we must accord due deference to those determinations made by the trier of fact.
In the present case, three witnesses testified that they witnessed the beating of the victim. Each of them testified that the assailants were two black males, one wearing a bright yellow coat and one wearing a dark coat. Contrary to the assertion of the appellant, the various witnesses' description of the second assailant as wearing a dark jacket is consistent with the appellant's assertion herein that he was wearing a camouflage style jacket. This incident took place between 10:00 p.m. and 10:15 p.m. on a November evening. By definition a camouflage style jacket is going to appear dark in the evening. The appellant's brief states that his jacket was of beige camouflage design. In support of this assertion the appellant cites to the testimony of Jennifer Ellis at page 314 of the transcript. This testimony merely stated that the second assailant was wearing black jeans, a black hat and a black coat. Ray described the appellant's jacket simply as Army fatigue. (Tr. 469.) Thomas Barr stated that the second assailant was wearing a dark outfit, but that it was kind of hard to see him. Sabrina DeJesus said the second assailant had on a darker coat meaning that it was darker than the bright yellow one worn by Ray.
The appellant also makes reference to the testimony of Thomas Barr where he stated that the second assailant was smaller than the one in the yellow jacket. Appellant's brief makes the conclusory statement that there is no question that Dontravio is considerably larger than Darren. The only testimony at trial as to the relative size of the perpetrators was offered by Ray himself who said that he and the appellant were about the same size. Additionally, the fact that Ray was wearing a big yellow winter jacket and that the two assailants were bending over to kick a helpless man could have caused Barr to misperceive the appellant's size vis-a-vis Ray's size.
Finally, the appellant states that the weight of the evidence did not support a conviction because Sabrina DeJesus testified that the second assailant had corn row braids, and the appellant did not have corn row braids on the night in question. The only person who testified that the appellant did not have corn row braids on the night of the murder was Ray, who repeatedly positively identified the appellant as being the person who assisted him in murdering Ryals. Lakesha Brown testified that the appellant wore corn row braids at one time, but that she was not sure whether he was still wearing them at the time of the accident.
Ray testified that the appellant was the second person involved in the brutal murder of Ryals. Lakesha Brown testified that the appellant admitted to her that he was involved with the killing. Annie Ray testified that the appellant admitted to her that he was with her son on the night of November 6, 1998 and attempted to provide an alibi for both individuals. Numerous witnesses testified that the two assailants searched the appellant after they were finished administering the fatal assault and then absconded with Ryals' wallet. There was no evidence offered at trial that tends to indicate that the appellant was anywhere other than the vicinity of the intersection of W. 58th Street and Wakefield Avenue between 10:00 p.m. and 10:30 p.m on the night in question.
Based on the foregoing, this court concludes that the weight of the evidence clearly supported both the appellant's conviction for murder and the conviction for aggravated robbery.
Therefore, this assignment of error is not well-taken.
The fourth and final assignment of error states:
 IV. THE TRIAL COURT COMMITTED PLAIN, PREJUDICIAL AND REVERSIBLE ERROR IN ITS JURY INSTRUCTIONS ON AIDING AND ABETTING WHICH ALLOWED THE APPELLANT TO BE CONVICTED WITHOUT THE REQUIRED SPECIFIC INTENT TO COMMIT THE CRIMES.
The standard of review to determine whether the court erred in its instructions to the jury is that of plain error. State v. Franklin(1991), 62 Ohio St.3d 118, 128, 580 N.E.2d 1, 9. In State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, the Ohio Supreme Court stated:
 Ordinarily, therefore, the failure to object to a jury instruction violative of R.C. 2901.05(A) constitutes a waiver of any claim of error relative thereto.
 Further, a jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R.
 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.
Appellant's trial counsel did not object to the aiding and abetting jury instruction. Therefore, this argument was waived for appellate purposes as there was no plain error at trial occasioned by the giving of this jury instruction.
This court has already concluded in our disposition of the second assignment of error that sufficient evidence existed for the jury to find the specific intent required for a conviction on a charge of murder.
When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper. State v. Perryman (1976), 49 Ohio St.2d 14, 358 N.E.2d 1040, paragraph five of the syllabus.
The trial court's jury instruction with regard to aider and abettor did not create a legal presumption of guilt nor was the appellant prejudiced or denied a fair trial. The evidence adduced at trial was sufficient to convict the appellant as a principal offender without the aider and abettor jury instruction. The appellant was, therefore, in no way prejudiced by the aider and abettor jury instruction.
The jury charge on aiding and abetting given by the trial court was an accurate statement of law as it currently exists in this state. The facts in this case, as stated by each of the eyewitnesses, supported a charge on aiding and abetting.
Therefore, this assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, A.J., and KILBANE, J., CONCUR.
 ______________________________ MICHAEL J. CORRIGAN, JUDGE