OPINION
{¶ 1} This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Gabriel D. Fernandez, challenges his convictions for burglary and theft with a firearm specification.
 {¶ 2} The following facts are relevant to this appeal. On December 15, 2000, the Lake County Grand Jury indicted appellant on one count of burglary, in violation of R.C. 2911.12(A)(2), and one count of theft, in violation of R.C. 2913.02(A)(1). Both charges included a firearm specification under R.C. 2941.141.
 {¶ 3} After appellant pled not guilty to the charges, he filed a motion to suppress various statements made to the authorities and the evidence recovered as a result of those statements. The trial court conducted a suppression hearing, during which Detective Robert Eden ("Detective Eden") was the only person to testify. A copy of the transcribed interview between appellant and the detective, along with a written Miranda waiver signed by appellant, was also introduced into evidence. At the conclusion of the hearing, the trial court ordered the parties to submit written briefs in lieu of closing arguments. The court then considered the briefs and issued a written judgment denying appellant's motion to suppress.
 {¶ 4} The matter then proceeded to a jury trial on June 26, 2001. Among those witnesses called to testify were the victim, the investigating police officers, two co-defendants, appellant's aunt, and appellant. Following the presentation of the evidence, the jury convicted appellant on both the burglary and theft charges. The jury also found him guilty of the firearm specification accompanying the theft offense but acquitted appellant of the firearm specification attached to the burglary count. The trial court accepted the jury's verdicts and referred appellant to the probation department for the preparation of a presentence investigation report and a victim impact statement.
 {¶ 5} Appellant subsequently filed a motion to set aside the jury's verdicts and enter a judgment of acquittal and a motion for a new trial. On August 2, 2001, the trial court conducted a sentencing hearing. At the beginning of the proceedings, the trial court orally overruled appellant's motion for acquittal and his motion for a new trial. The trial court then ordered appellant to serve a five-year sentence on the burglary conviction and a one-year sentence with regard to the theft conviction, with the sentences to be served concurrently to each other. As for the firearm specification, the trial court sentenced appellant to an additional mandatory one-year prison term, which was to be served consecutively and prior to the period of incarceration imposed for the underlying convictions.
 {¶ 6} Although the trial court intended to include his oral rulings in its sentencing entry, a written statement overruling appellant's motions was inadvertently omitted. Accordingly, the trial court issued an amended judgment entry in which it added the omitted language.
 {¶ 7} From this decision, appellant filed a timely notice of appeal with this court. He now asserts the following assignments of error for our consideration:
 {¶ 8} "[1.] The Trial Court erred to the prejudice of the Appellant in failing to grant the Motion to Suppress Evidence.
 {¶ 9} "[2.] The Trial Court erred to the prejudice of the Appellant when instructing the jury as to the definition of `on or about.'
 {¶ 10} "[3.] The Trial Court erred to the prejudice of the Appellant in refusing to allow him to cross-examine State's Witness Juan Chamorro regarding a prior conviction[.]
 {¶ 11} "[4.] The Trial Court erred to the prejudice of the Appellant by not setting aside the verdict as the jury had lost its way[.]
 {¶ 12} "[5.] The verdict is against the manifest weight of the evidence and contrary to law[.]
 {¶ 13} "[6.] The Trial Court erred to the prejudice of the Appellant by not sentencing him to the minimum sentence."
 {¶ 14} Under his first assignment of error, appellant submits that the trial court erred when it overruled his motion to suppress. In doing so, appellant first argues that his statement to Detective Eden on August 28, 2000, was involuntary because it was obtained through impermissible promises of leniency.
 {¶ 15} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
 {¶ 16} Before questioning a suspect in custody, a police officer must inform him that he has the right to remain silent, that his statements may be used against him in a court of law, that he has the right to an attorney, and that if he cannot afford an attorney, one will appointed prior to questioning. State v. Bolt (Dec. 3, 1999), 11th Dist. Nos. 98-L-068 and 98-L-067, 1999 WL 1313850, at 7. "If the state cannot prove that the suspect was cognizant of the above procedural safeguards, any inculpatory or exculpatory statement made by the suspect as a result of a custodial interrogation may not be used against the suspect at a subsequent criminal trial." State v. Ready (2001), 143 Ohio App.3d 748,756.
 {¶ 17} A suspect, however, may waive those rights and speak to the authorities without the presence of counsel if he so chooses. Bolt at 7. That being said, "a suspect's waiver of his rights and his subsequent confession must be made voluntarily, knowingly and intelligently. Mirandav. Arizona (1966), 384 U.S. 436. `A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.'" State v. Ashford (Feb. 16, 2001), 11th Dist. No. 99-T-0015, 2001 WL 137595, at 2.
 {¶ 18} To determine whether a statement was voluntarily made, the trial court must consider the totality of the circumstances. Id. This includes, but is not limited to, "the age, mentality, prior criminal experience of the defendant, the length, intensity, and frequency of the interrogation, and the existence of physical deprivation or mistreatment, or the existence of any threat or inducement." Id.
 {¶ 19} Moreover, a statement cannot be used against a defendant if it was the result of, for example, threats or direct or implied promises of leniency. Id. "If `"the defendant is given to understand that he mightreasonably expect benefits in the nature of more lenient treatment at thehands of the police, prosecution or court in consideration of making astatement, even a truthful one, such motivation is deemed to render thestatement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear."'" (Emphasis in the original and citations omitted.) Id.
 {¶ 20} "*** [A]dmonitions to tell the truth and even badgering a suspect to be truthful do not rise to the level of improper conduct."State v. Jett (Mar. 31, 1998), 11th Dist. No. 97-P-0023, 1998 WL 258166, at 4. See, also, Ashford at 3 (observing that "[a]dmonitions to tell the truth made by police officers are considered neither threats nor promises, and are permissible."). Furthermore, "[p]romises that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate an otherwise legal confession." Ashford at 3.
 {¶ 21} Before addressing the merits of appellant's first assignment of error, we must emphasize that the statement appellant asked the trial court to suppress was not a confession. In fact, during appellant's interview with Detective Eden, appellant repeatedly denied any involvement in the crime itself, although he did provide the location of some of the stolen weapons.
 {¶ 22} Prior to questioning appellant at the Lorain Police Department, Detective Eden informed him of his Miranda rights and had appellant sign a written waiver of those rights. The detective then proceeded to ask appellant about his involvement in the theft. During their conversation, the following exchange took place:
 {¶ 23} "DET. EDEN: Alright. Time to break away. Time to go live on your own. Time to be your own man instead of somebody else's lackey. Tellme the truth here. What do you want? Immunity? A guarantee you're notgoing to go to prison. I can't give you all that.
 {¶ 24} "FERNANDEZ: Can't get me ___ I know that.
 {¶ 25} "DET. EDEN: I can give you [a] recommendation. I can see that you don't get charged with a felony, alright? I can see that you might get some county time, instead of prison. Do you want somebody else to back me up on that? Do you want one of the local detectives to come in here and back me up on that? I can do that. I can come here all the way from Eastlake when you come to trial and I can recommend to the prosecutor, or I can talk to your attorney and I can tell them listen, he was cooperative with me. I don't want to see this young lad go to jail. I want to see him get work release. Do you want that?
 {¶ 26} "FERNANDEZ: What ___ get arrested on?
 {¶ 27} "DET. EDEN: I want the truth out of you. You just decide how long you want to go to jail. Do you want to go to the penitentiary? Prison? Or, do you want to do some minimal amount of county time with work release? All you got to do is hold a job. Tell me. What do you want me to do for you?" (Emphasis added.)
 {¶ 28} In overruling appellant's motion to suppress, the trial court found the following:
 {¶ 29} "In this case, [appellant] is a mentally sound, nineteen year old adult. He was not in custody at the time of his confession. He had accompanied a friend to the Lorain County Court House and was interviewed by Eastlake police officers at the court house in a non-custodial setting. He was never physically restrained or barred from leaving or terminating the interview. The interview was short, approximately 30 to 45 minutes long. [Appellant] was not arrested afterwards. Prior to the interview, he was given both oral and written Miranda warnings. The interview was tape recorded. There was no evidence that [appellant] was impaired or fatigued. His answers to questions were logical. [Appellant] never attempted to terminate the interview or invoke his right to an attorney.
 {¶ 30} "During the interview, an Eastlake detective made explicit and implied statements that he would recommend leniency if [appellant] cooperated. While the officer stated that he could not guarantee [appellant] would not go to prison, he could give a recommendation that could avoid having [appellant] being charged with a felony and that it was the choice of [appellant] if he wanted jail or prison time. However,no specific or direct promises were made. At no time was a promise not toprosecute ever made. The court concludes that these statements, in an otherwise non-custodial and non-coercive atmosphere, do not, standing alone, invalidate [appellant's] statements. The statements by the Eastlake detective are not such that they would overbear [appellant's] will to resist and bring about a confession not freely self-determined." (Emphasis added.)
 {¶ 31} Appellant claims that his young age, the fact that he was in special education classes for learning disabled individuals, and Detective Eden's "illegal inducements" rendered his statements, and any evidence derived therefrom, inadmissible. However, "a low mental aptitude of the interrogee is not enough to show overreaching." Ashford at 3. Moreover, there is no evidence before this court to indicate that appellant had difficulty understanding the waiver of rights form he signed prior to questioning or, for that matter, the questions that were asked.
 {¶ 32} That being said, we conclude that Detective Eden's comments during the interview went beyond what is permissible in these types of situations. By telling appellant that he could "see that [he did not] get charged with a felony" in return for his cooperation, Detective Eden clearly made an improper promise of leniency. This promise, in turn, could have influenced appellant's decision to reveal the location of the stolen weapons.
 {¶ 33} The state counters by arguing that even if appellant did not voluntarily give his statement to Detective Eden, the trial court's decision to overrule appellant's motion to suppress was still proper because of the inevitable discovery doctrine. Specifically, the state maintains that Detective Theodore Kroczak ("Detective Kroczak") interviewed one of appellant's co-defendant's, Juan Chamorro ("Chamorro"), on August 29, 2000, the day after Detective Eden spoke with appellant. During this interview, Chamorro confessed to the crime and told Detective Kroczak where they had hidden some of the stolen weapons. Because this was the same location that appellant had told Detective Eden about the day before, the state submits that the stolen weapons ultimately would have been discovered even if appellant had not given that information.[1]
 {¶ 34} The inevitable discovery doctrine, which was established by the United States Supreme Court in Nix v. Williams (1984), 467 U.S. 431, provides that "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." State v. Perkins (1985), 18 Ohio St.3d 193, syllabus. The doctrine is "triggered if the prosecution shows within a reasonable probability that police officials would have ultimately discovered the illegally obtained evidence apart from the unlawful conduct." State v.Seals (Dec. 30, 1999), 11th Dist. No. 98-L-206, 1999 WL 1314662, at 6.
 {¶ 35} Here, the state introduced evidence at the suppression hearing indicating that Chamorro had confessed to the crime and revealed the location of the stolen weapons the day after appellant made his statement. Accordingly, we conclude that it was inevitable the police would discover the firearms in the home identified by appellant and Chamorro.
 {¶ 36} Even if the inevitable discovery doctrine were not applicable, the failure to suppress appellant's statement was harmless error at best. The state introduced a significant amount of evidence against appellant during his trial, including the testimony of his two co-defendants. However, the state did not present the jury with appellant's statement to Detective Eden. Thus, any error that may have occurred was harmless, in light of the overwhelming evidence against appellant, and thus, did not prejudice him. State v. Williams (1983),6 Ohio St.3d 281, 290, citing Harrington v. California (1969),395 U.S. 250, 254 (holding that "[w]here evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt.").
 {¶ 37} Next, appellant argues that the trial court erred in not suppressing certain statements obtained by the Eastlake Police Department in violation of his Sixth Amendment right to counsel. Appellant maintains that an unnamed Eastlake police officer "allegedly procured statements from [him] after he had been arrested and a preliminary hearing was held" without his attorney present.
 {¶ 38} Appellant is correct that "the Sixth Amendment right to counsel attaches at the initiation of adversary judicial criminal proceedings, whether by formal charge, preliminary hearing, indictment, information, or arraignment." State v. Adkins (1992), 80 Ohio App.3d 211,219. As a result, "[o]nce an accused's Sixth Amendment right to counsel attaches, the state may not knowingly circumvent that right in order to obtain incriminating evidence against him." Id.
 {¶ 39} Having said that, a review of the transcript of the suppression hearing shows that during the hearing, appellant primarily focused on whether Detective Eden made inappropriate promises when interviewing him on August 28, 2000. The question of whether Detective Eden, or some other Eastlake police officer, spoke with appellant after he had retained his attorney was not sufficiently addressed by appellant at that time. In fact, appellant did not then, and does not now, point to any specific statements made by him that should have been suppressed. Rather, appellant generalizes when he suggests that an Eastlake police officer violated his Sixth Amendment right to counsel.
 {¶ 40} Without more, we simply have nothing to review on appeal. A person's Sixth Amendment right to counsel is not violated every time a police officer speaks with a represented criminal defendant. For all this court knows, appellant initiated the contact and freely volunteered the information he is now seeking to suppress. Appellant's first assignment of error has no merit.
 {¶ 41} In his second assignment of error, appellant argues that the trial court erred when it improperly instructed the jury as to the definition of "on or about." Appellant maintains that the given instruction was overbroad and placed an unfair burden on him to defend against an unknown length of time. We disagree.
 {¶ 42} The decision to issue a particular jury instruction rests within the sound discretion of the trial court. State v. Jones (Mar. 17, 1995), 11th Dist. No. 94-L-060, 1995 Ohio App. LEXIS 971, at 3. Accordingly, this court will not reverse a decision concerning the giving of jury instructions absent an abuse of discretion. Id. at 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious. State v. Montgomery (1990), 61 Ohio St.3d 410, 413.
 {¶ 43} When instructing the jury on the elements of burglary, the trial court stated the following with respect to the date the crime allegedly occurred:
 {¶ 44} "The State claims the offense took place on or about July 25, 2000. It is not necessary that the State prove that the offense was committed on the exact day as charged in the indictment. It is sufficient to prove that the offense took place on a date reasonably near the date claimed."
 {¶ 45} To convict appellant of burglary and theft, the state was not required to prove the precise date and time the crimes occurred as neither are essential elements of the charged offenses. State v.Sellards (1985), 17 Ohio St.3d 169, 171. As such, it was sufficient to prove that the alleged crimes occurred at or about the time charged in the indictment. State v. Geboy (2001), 145 Ohio App.3d 706, 724. Furthermore, the given instruction is virtually identical to the model jury instruction provided in the Ohio Jury Instructions. See 4 Ohio Jury Instructions (2002), Section 407.10, at 55. Appellant's second assignment of error is not well-taken.
 {¶ 46} Under assignment of error three, appellant claims that the trial court abused its discretion when it denied his attorney the opportunity to cross-examine one of appellant's co-defendants, Chamorro, about a prior felony drug conviction. Appellant submits that evidence of the conviction and the accompanying sentence should have been allowed because their probative value outweighed any possible prejudicial effect.
 {¶ 47} Generally speaking, Evid.R. 609(A)(1) allows a party to impeach a witness' credibility by cross-examining the witness about prior felony convictions. However, "[u]nder Evid.R. 609, a trial court has broad discretion to limit any questioning of a witness on cross-examination which asks more than the name of the crime, the time and place of conviction and the punishment imposed, when the conviction is admissible solely to impeach general credibility." State v. Amburgey
(1987), 33 Ohio St.3d 115, syllabus.
 {¶ 48} During appellant's trial, the state called Chamorro to testify about the commission of the crimes and appellant's involvement therein. In doing so, the prosecutor questioned Chamorro about a prior felony drug conviction in Indiana. Chamorro admitted that he had been convicted of the crime and stated that he had received probation as punishment.
 {¶ 49} Appellant argues he should have been able to question Chamorro about his sentence because the witness had misled the jury when he testified that he had received probation. Appellant believes that such evidence was probative of Chamorro's truthfulness or untruthfulness as a witness.
 {¶ 50} At the conclusion of Chamorro's testimony, appellant's attorney made the following proffer:
 {¶ 51} "I would proffer at this point Mr. Chamorro testified that he was convicted on a drug charge in the State of Indiana and he got probation. I would proffer information, a judgment of conviction, which I was not able to get on Juan Chamorro, that he was sentenced to two years in prison. I was going to use that to impeach his credibility for discrepancy of his testimony and the entry that states that he was sentenced for two years."
 {¶ 52} Although appellant argues that Chamorro's testimony was inconsistent with the above proffer, we disagree. Appellant's attorney stated that Chamorro had been "sentenced to two years in prison." This is not inconsistent with Chamorro's testimony that he received probation. Simply because a court imposes a two year sentence does not necessarily mean the defendant served two years in prison. Rather, the sentencing court could have ordered appellant to serve probation in lieu of actual prison time.
 {¶ 53} Moreover, appellant's attorney did not ask appellant what sentence he received:
 {¶ 54} "Q. Now Juan, you were convicted in 1998 for possession of cocaine, 1998?
 {¶ 55} "A. I wasn't convicted, I was supposed to be convicted, I got probation.
 {¶ 56} "Q. You got probation?
 {¶ 57} "A. Yes."
 {¶ 58} As a result, we cannot say that the trial court abused it discretion in refusing to allow appellant's attorney to further cross-examine Chamorro on his prior felony conviction. Appellant's third assignment of error has no merit.
 {¶ 59} In his fourth assigned error, appellant maintains that the trial court erred in not setting aside his convictions on the grounds that the jury returned inconsistent verdicts. Appellant argues that the jury's decision to find him guilty of the firearm specification attached to the theft charge while acquitting him of a similar specification with respect to the burglary charge is "facially contradictory."
 {¶ 60} The jury's verdicts are neither contradictory nor inconsistent. Appellant committed burglary when he and Chamorro forcefully opened a window in the victim's home and entered the residence with the purpose of committing a theft offense. There was absolutely no evidence that appellant had a firearm on his person or under his control at that point in time. However, once inside the house, appellant stole numerous firearms that he and Chamorro took back through the open window and loaded them into appellant's car. Accordingly, the jury's verdicts are not necessarily inconsistent.
 {¶ 61} Nevertheless, even if they were, appellant was still not entitled to a new trial. As the Supreme Court of Ohio held in State v.Lovejoy (1997), 79 Ohio St.3d 440, paragraph one of the syllabus, "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out ofinconsistent responses to different counts, but only arises out ofinconsistent responses to the same count." (Emphasis added.) See, also,State v. Brown (1984), 12 Ohio St.3d 147, syllabus. In other words, inconsistent verdicts relating to different counts do not justify the reversal of an otherwise valid conviction. Appellant's fourth assignment of error has no merit.
 {¶ 62} Under his fifth assignment of error, appellant contends that the jury's verdicts are both unsupported by sufficient evidence and against the manifest weight of the evidence.
 {¶ 63} When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
 {¶ 64} On the other hand, when reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 65} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 66} At trial, the state introduced evidence that on or about July 25, 2000, appellant and two friends, Chamorro and Jason Hartman ("Hartman") went to the victim's home in Eastlake, Ohio. Once there, the three men proceeded to forcefully open a window into the home and enter the residence. While inside, they stole a large assortment of weapons, ammunition, and other items. Appellant, Chamorro, and Hartman placed the stolen property in appellant's car and transported it back to Lorain, Ohio, where the three men lived, and hid the items in various locations throughout the city.
 {¶ 67} Both Chamorro and Hartman confessed to the crimes prior to appellant's trial and testified as prosecutorial witnesses. In doing so, the two men told the jury that appellant actively participated in the burglary and the theft, both by entering the home and loading the stolen items into his car, and by helping to hide the evidence after the fact.
 {¶ 68} In his defense, appellant called his aunt to the witness stand who testified that on the day in question appellant helped her and her mother move into their new home. Appellant also testified on his own behalf. Although appellant admitted that he had been to the victim's home with Chamorro and Hartman before, he denied being there on the day the state alleged the crimes occurred. Instead, appellant testified that he was helping his aunt and her mother move.
 {¶ 69} We conclude that the evidence introduced at trial was sufficient and of adequate weight to support the jury's finding of guilt on the charge of burglary and on the charge of theft. There was a substantial amount of evidence indicating that appellant was at the victim's home on the day in question, and that he was involved in the crimes. As for appellant's argument that the jury's verdict was against the manifest weight of the evidence, after reviewing the entire record and weighing the evidence presented along with all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not lose its way or create a manifest miscarriage of justice in connection with appellant's convictions. Furthermore, although appellant challenges the credibility of many of the state's witnesses, the credibility of each witness was a critical issue for the jury to decide, and this court will not disturb those findings on appeal. Ready, supra. Appellant's fifth assignment of error is not well-taken.
 {¶ 70} Under his sixth assignment of error, appellant argues that the trial court erred in sentencing him to serve more than the minimum sentence for burglary and theft because the court failed to make the required findings under R.C. 2929.14(B). Specifically, appellant maintains that there is no evidence in the record to suggest that the minimum sentences would have demeaned the seriousness of the crimes or would have failed to adequately protect the public from future crime by him.
 {¶ 71} Appellant is correct that R.C. 2929.14(B) requires the sentencing court to impose the minimum sentence for first-time imprisonment unless it specifies on the record that the shortest prison term would demean the seriousness of the conduct or would not adequately protect the public from future crime by the offender. State v. Bradford
(June 1, 2001), 11th Dist. No. 2000-L-103, 2001 Ohio App. LEXIS 2487, at 6. However, in interpreting this requirement, the Supreme Court of Ohio has held:
 {¶ 72} "R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110, syllabus.
 {¶ 73} According to Edmonson, a trial court is not required to give its reasons underlying its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crime before the court can lawfully impose more than the minimum authorized sentence. Bradford at 7. Rather, when sentencing a person to first-time imprisonment, the trial court merely has to state somewhere on the record that one or both of the reasons set forth in R.C. 2929.14(B) justify a sentence which is longer than the minimum. Bradford at 7-8. In other words, the trial court "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." Edmonson at 326.
 {¶ 74} This court has held on numerous occasions that the findings mandated by R.C. 2929.14(B) "must appear somewhere on the record of sentence, either in the judgment or in the transcript of the sentencing hearing." (Emphasis added.) State v. Rone (Dec. 4, 1998), 11th Dist. No. 98-A-0001, 1998 Ohio App. LEXIS 5813, at 6. See, also, State v. Hoskins
(Mar. 16, 2001), 11th Dist. No. 2000-A-0037, 2001 Ohio App. LEXIS 1232. That is, "so long as the trial court makes the required finding on the record, it does not matter whether it is made in the sentencing entry or during the sentencing hearing itself." State v. Jaryga (Dec. 28, 2001), 11th Dist. No. 99-L-179, 2001 Ohio App. LEXIS 6002, at 13.
 {¶ 75} Under the facts of this case, the trial court was not required to comply with R.C. 2929.14(B) as appellant was serving a prison term for a separate felony offense committed in Cuyahoga County. R.C.2929.14(B) does not apply when the offender was serving a prison term at the time of the current offense or when the offender previously had served time in prison.
 {¶ 76} Even if R.C. 2929.14(B) did apply to this case, we conclude that the trial court fully complied with the statute when it deviated from the minimum sentences. The trial court's judgment entry contains the following finding: "The Court further finds pursuant to R.C. 2929.14(B) that [appellant] is currently serving a prison term; the shortest prison term will demean the seriousness of [appellant's] conduct; the shortest prison term will not adequately protect the public from future crime by [appellant] or others." This finding fully comports with R.C. 2929.14(B),Edmonson, and this court's application thereof. State v. Dwyer (Aug 10, 2001), 11th Dist. No. 2000-L-090, 2001 Ohio App. LEXIS 3537, at 4.
 {¶ 77} Moreover, during the sentencing hearing, the trial court expressly stated on the record that "[t]he Court finds that the shortest prison term would demean the seriousness of [appellant's] conduct and will not adequately protect the public from future crime by [appellant]." Appellant's sixth assignment of error is not well-taken.
 {¶ 78} Based on the foregoing analysis, appellant's six assignments of error have no merit. The judgment of the trial court, therefore, is affirmed.
DONALD R. FORD and ROBERT A. NADER, JJ., concur.
[1] During the suppression hearing, the state introduced into evidence a copy of Chamorro's hand-written statement.