[Cite as *State v. Bradshaw*, 2018-Ohio-1105.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :          Case No.   17CA3803

    vs.                          :

GARVIN S. BRADSHAW,               :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

S. Andrew Sturgill, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:   3-9-18
ABELE, J.

{¶ 1}   This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence.  A jury found Garvin S. Bradshaw, defendant below and appellant herein, guilty of three offenses: (1) trafficking in heroin, in violation of R.C. 2925.03(A)(2); (2) possession of heroin, in violation of R.C. 2925.11(A); and (3) tampering with evidence, in violation of R.C. 2921.12(A)(1).

{¶ 2}   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF TAMPERING WITH EVIDENCE AS INDICTED; OR IN THE ALTERNATIVE, THE CONVICTION OF TAMPERING WITH EVIDENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF EITHER CHARGE OF POSSESSION OF HEROIN OR TRAFFICKING IN HEROIN AS INDICTED; OR, IN THE ALTERNATIVE, THE CONVICTIONS OF POSSESSION OF HEROIN AND TRAFFICKING IN HEROIN WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 3} After a Scioto County grand jury returned an indictment that charged appellant with trafficking in heroin, possession of heroin, and tampering with evidence, appellant entered not guilty pleas. The trial court later held a jury trial.

{¶ 4} At trial, Matthew Mathias, appellant's parole officer, testified that he arrested appellant "pending an investigation of violations." Mathias did not elaborate upon the nature of the violations. However, Mathias stated that before he placed appellant in a vehicle to transport him to jail, Mathias checked the vehicle's backseat for any items or contraband. Mathias then asked appellant whether he had anything on him, and appellant stated that he did not. Mathias patted down appellant and did not locate any contraband. Mathias indicated that he "tr[ies] to make it a standard practice to remind [arrestees] that they are going into custody, they don't want to catch any other charges, and [appellant] said he ha[d] nothing else on him."

{¶ 5} Mathias testified that after appellant exited the vehicle at the jail, Mathias's supervisor, Parole Services Supervisor Matthew Stuntebeck, saw appellant throw something in the trash. Stuntebeck retrieved the item that looked like a cigarette wrapper. Mathias stated

that Stuntebeck asked appellant about the item, and appellant responded that "it was some dope * * * [and] that he was taking it to a guy in the Ville."[1]

{¶ 6} Stuntebeck testified that he was present during appellant's arrest and helped transport him to the jail. Stuntebeck explained that he and Mathias arrested appellant "pending an investigation * * * for a potential parole violation."[2]

{¶ 7} Stuntebeck stated that he, like Mathias, generally informs arrestees "that it's potentially another felony charge if they do convey something into a detention facility and can lead to further violations, as well as potentially new charges." Stuntebeck indicated that he asked appellant if he had "anything else" that might "get [him] in trouble." Appellant said that he did not. Stuntebeck stated that before he placed appellant in the transport vehicle, he personally inspected the backseat to ensure that it did not contain any contraband.

{¶ 8} Stuntebeck explained that when they arrived at the jail, he walked over to help appellant out of the car. As he did so, he noticed that appellant appeared to be "fidgeting." Stuntebeck testified that once appellant exited the vehicle, Stuntebeck saw "something in [appellant's] hand and [he] kind of had his hands in the back of his pants."

{¶ 9} Stuntebeck related that as they approached the door to the jail, appellant dropped something in the trash can. Stuntebeck retrieved the item and discovered that it was a "really thin smashed Pall Mall cigarette package" that contained a powdery substance wrapped inside a small plastic bag. Stuntebeck asked appellant what it was, and appellant stated it was "dope."

---

[1] The testimony indicates that the "Ville" is a specific neighborhood located within Portsmouth, Ohio.

[2] Appellant's brief indicates that the officers were investigating him for community control violations. The state did not present any evidence regarding the alleged violations. For the sake of consistency, however, we use the terminology the officers used at trial and will thus refer to the investigation as involving parole violations.

Stuntebeck next inquired whether it was heroin, and appellant responded, "Yeah, something like that." Stuntebeck explained that appellant indicated that "he was going to take it to some guy in the Ville to deliver."

{¶ 10} After the state rested, appellant moved for a Crim.R. 29 judgment of acquittal regarding the tampering with evidence charge. He asserted that the state failed to present evidence showing that appellant tampered with evidence related to an ongoing or likely investigation into alleged drug activity. Appellant alleged that no evidence indicated that he knew the officers were investigating, or likely to investigate, appellant for drug activity. Appellant claimed that without evidence that the officers suspected him of drug activity, the state could not show that he tampered with evidence relating to an ongoing or likely investigation.

{¶ 11} The state countered that appellant knew the officers were investigating him for violating parole and that the investigation did not end at the jail-house doors. The state further argued that the officers warned appellant about the consequences of carrying contraband into the jail, and that warning gave appellant knowledge that an investigation into whether he was carrying contraband was likely. The trial court overruled appellant's motion.

{¶ 12} The jury subsequently found appellant guilty of all three offenses as charged in the indictment. The trial court (1) merged appellant's trafficking in heroin and possession of heroin convictions and ordered appellant to serve twelve months in prison for trafficking in heroin, (2) sentenced appellant to serve thirty-six months in prison for his tampering with evidence, and (3) further ordered that the sentences be served consecutively to one another for a total of forty-eight months. This appeal followed.

I

{¶ 13} Appellant's first and second assignments of error assert that the state failed to present sufficient evidence to support his convictions, or alternatively, that his convictions are against the manifest weight of the evidence. For ease of discussion, we first set forth the standards that apply to both assignments of error.

{¶ 14} We initially observe that "sufficiency" and "manifest weight" present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶23 (stating that "sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus. A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins,* 78 Ohio St.3d at 386. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *E.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks,* 61 Ohio St .3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶ 15} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *E.g., State v. Hill,* 75

Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 16} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins,* 78 Ohio St.3d at 387. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility. *State v. Dean,* 146 Ohio St.3d 106, 2015–Ohio–4347, 54 N.E.3d 80, ¶151, citing *Thompkins,* 78 Ohio St.3d at 387. A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶31. "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006–Ohio–6312, ¶6, quoting *State v. Lawson,* 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997). As the court explained in *Eastley* :

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *

> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.* at ¶21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶24; *accord State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007–Ohio–6331, ¶6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶ 17} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). If the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). *Accord Eastley* at ¶12, quoting *Thompkins,* 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (explaining that a judgment is not against the manifest weight of the evidence when "'"the greater amount of credible evidence"'" supports it). A reviewing court

should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *Martin,* 20 Ohio App.3d at 175. *Accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

## II

{¶ 18} In his first assignment of error, appellant asserts that the state did not present sufficient evidence to support his tampering with evidence conviction, or alternatively, that his conviction is against the manifest weight of the evidence. In particular, appellant contends that the state failed to present any evidence to show that the evidence he allegedly tampered with, heroin, related to an ongoing or likely investigation regarding the possession of or trafficking in heroin. Appellant claims that at the time he allegedly disposed of the heroin, the only investigation concerned his alleged parole violations. Because appellant contends that the state did not present any evidence that his alleged violations involved drug-related offenses or that the heroin related to his alleged parole violations, appellant thus argues that the evidence allegedly tampered with, heroin, did not bear any relation to an ongoing or likely investigation. He therefore asserts that because the evidence fails to show a pending or likely investigation into his alleged drug-related activity, the evidence is legally insufficient to support his tampering with evidence conviction.

{¶ 19} The tampering with evidence statute provides:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

To support a conviction for tampering with evidence under R.C. 2921.12(A)(1), the state must establish, beyond a reasonable doubt, that the defendant (1) knew "of an official proceeding or investigation in progress or likely to be instituted," (2) altered, destroyed, concealed, or removed "the potential evidence," and (3) possessed a purpose to impair "the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶11.

A

{¶ 20} The first element requires the state to establish that at the time of concealment, the defendant knew "of an official proceeding or investigation in progress or likely to be instituted." *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶2. "The likelihood of an investigation is measured at the time of the alleged tampering." *State v. Martin*, — Ohio St.3d —, 2017-Ohio-7556, — N.E.3d —, ¶110, citing *Straley* at ¶19, and *Barry* at ¶21.

{¶ 21} R.C. 2901.22(B) defines when a person acts "knowingly." The statute states:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 22} This means that the defendant must be "*aware* that conduct will probably cause a certain result or will probably be of a certain nature or that circumstances probably exist." *Barry* at ¶24 (emphasis sic). Furthermore, R.C. 2901.22(B) "provides that a person can be charged with knowledge of a particular fact only if that person '*subjectively* believes that there is a high

probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.'" *Id.* (emphasis sic), quoting R.C. 2901.22(B). Accordingly, the definition of "knowingly" does not encompass knowledge that a reasonably diligent person should, but does not, have." *Id.* (emphasis sic). Consequently, "constructive knowledge is insufficient to prove that [an accused] knew that an investigation was ongoing or likely to be commenced." *Id.* at ¶25. "Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense." *Id.* at ¶2.

**{¶ 23}** However, "knowledge of a likely investigation may be inferred when the defendant commits a crime that *is* likely to be reported." *Martin* at ¶118 (emphasis sic). For instance, knowledge may be inferred in homicide cases because "[h]omicides are highly likely to be discovered and investigated," and "a jury may reasonably believe that a murderer knows this." *Martin* at ¶119.

**{¶ 24}** In *Barry*, the court determined that the evidence was legally insufficient to show that the defendant knew that an official proceeding or investigation was in progress or was likely to be instituted at the time she concealed drugs. In *Barry*, the defendant hid the drugs in her body before departing for a road trip. She intended to drive with a group of friends to West Virginia. While en route, a law enforcement officer stopped the defendant's vehicle. After questioning, the officer began to suspect that the defendant had hidden drugs inside her body. The officer then warned the defendant that he could obtain a warrant for a body cavity search if she did not cooperate. The defendant eventually admitted that she had concealed drugs inside her body. The state subsequently indicted the defendant for trafficking in heroin, possession of heroin, conspiracy to traffic in drugs, and tampering with evidence. The jury found her guilty of

all four offenses, and on appeal, we affirmed her convictions. A majority of the panel determined that the defendant committed the "unmistakable crimes of drug trafficking, drug possession and conspiracy to traffic in drugs" at the time she concealed the drugs, and thus, that she had "constructive knowledge of an impending investigation." 2014-Ohio-4452, ¶12.

{¶ 25} We then certified the following question to the Ohio Supreme Court: "'Whether a person who hides evidence of a crime that is unmistakable to him or her commits tampering with evidence in the absence of evidence that a victim or the public would report a crime?'" *Barry*, 145 Ohio St.3d 354, ¶ 1, quoting 141 Ohio St.3d 1452, 2015-Ohio-239, 23 N.E.3d 1195. The supreme court answered, "no." The court explained its reasoning as follows:

> The answer to this question is no, because an element of tampering with evidence requires the state to prove beyond a reasonable doubt that the accused knew that an official proceeding or investigation is in progress or likely to be instituted at the time the evidence is altered, destroyed, concealed, or removed. Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense, and therefore, the fact that an act was unmistakably a crime does not, by itself, establish that the accused knew of an investigation into that crime or that such an investigation was likely to be instituted. Rather, the state must demonstrate that the accused knew of a pending official proceeding or investigation or knew that such a proceeding or investigation was likely to be instituted at the time of the concealment.

*Id.* at ¶2.

{¶ 26} The court concluded that the evidence failed to establish that the defendant "knew or could have known that a state trooper would stop her car * * * and begin an investigation of her for drug trafficking and drug possession" at the time she concealed the drugs. *Id.* at ¶3. The court explained that the evidence did not show that "at the time [the defendant] concealed the heroin, she knew than an investigation into her drug trafficking and possession was likely to be instituted." *Id.* at ¶22. The court further noted that when the defendant hid the drugs, only

her coconspirators were present and nothing in the record suggested that "she thought it likely that she would be stopped by law enforcement." *Id.* at ¶27. The court additionally observed that the evidence failed to show that the defendant "displayed willful ignorance by placing the heroin in her vaginal cavity with a subjective belief that an investigation was likely." *Id.* Instead, the court found that the defendant "concealed the drugs with a purpose to avoid detection by law enforcement and without knowledge of an impending or likely investigation." *Id.* The court thus concluded that the evidence was insufficient to support the defendant's tampering with evidence conviction.

{¶ 27} In *Martin*, the court determined that the evidence adequately showed that the defendant knew of an ongoing or likely investigation. In that case, the defendant shot two people at close range and then burned his clothing. He later was charged with and convicted of multiple counts, including tampering with evidence. On appeal to the Ohio Supreme Court, the defendant asserted that the evidence did not support his tampering with evidence conviction. He argued, in part, that the evidence failed to show that he had knowledge of an ongoing or likely investigation. *Id.* at ¶115. The Ohio Supreme Court disagreed and explained: "As a matter of common sense, we can infer that a person who had shot two people and left them for dead in a residential neighborhood would know that an investigation was likely." *Id.* at ¶116.

{¶ 28} The court recognized its holding in *Barry* that "'Ohio law does not impute constructive knowledge of an impending investigation based solely on the commission of an offense.'" *Id.*, quoting *Barry* at ¶2. The court, however, distinguished Barry. The court stated that in *Barry*, the underlying offense was heroin possession, and the defendant allegedly concealed the heroin inside her body. *Id.* at ¶117. The court explained that "when the

defendant [in *Barry*] concealed the heroin, she had no reason to believe that the police would investigate her, for 'only her coconspirators were present * * * and nothing in the record shows that she thought it likely that she would be stopped by law enforcement.'" *Id.*, quoting *Barry* at ¶27. The court thus indicated that *Barry* required the court to answer "'whether knowledge that an official proceeding or investigation is pending or likely to be instituted can be imputed to one who commits a crime, regardless of whether that crime is likely to be reported to law enforcement.'" *Id.*, quoting *Barry* at ¶17.

{¶ 29} The *Martin* court concluded that "*Barry* does not foreclose the possibility that knowledge of a likely investigation may be inferred when the defendant commits a crime that is likely to be reported." The court noted that *Barry* involved "a possessory offense," whereas the defendant in *Martin* committed homicide. *Id.* at ¶118. The court stated that "[h]omicides are highly likely to be discovered and investigated[, and c]ertainly, a jury may reasonably believe that a murderer knows this." *Id.* The court thus concluded that the evidence supported a finding that when the defendant burned the clothes he had worn during the shootings, he knew that an official investigation was about to be or likely to be instituted. *Id.* at ¶119.

{¶ 30} In *State v. Cheesman*, 5th Dist. Fairfield No. 15CA59, 2016-Ohio-5040, the court concluded that the defendant possessed knowledge of an official investigation in progress or that was about to be or likely to be instituted. In that case, the defendant was arrested for failing to report to his community control officer. At the time of his arrest, officers asked the defendant "if he had anything on him or inside of him" and patted him down for weapons. *Id.* at ¶4. The defendant denied that he had any items on him or inside of him. Officers then transported the defendant to the jail.

{¶ 31} At the jail, a deputy again patted down the defendant and asked the defendant "if he had anything in or on him that was illegal, warning that if he did it would be considered conveyance, an additional felony with which he could be charged." *Id.* at ¶6. The defendant stated that he did not. Officers subsequently discovered a ball of aluminum foil in the defendant's pocket and the pen-barrel with the ink tube removed–items commonly associated with drug use.

{¶ 32} During the pat-down search, the defendant clenched his muscles and gave the officers other suspicious indicators. The officers thus sought and obtained approval for a strip search. Once the officers received permission to conduct the strip search, the defendant indicated that he did not feel well. The officers took appellant to the "change-out room" and asked him to disrobe, turn around, and cough. As the defendant removed his underwear, he told the officers he felt faint. The defendant slowly lowered himself to the ground and began to mimic a seizure. As he was rolling around on the ground, the defendant appeared to reach his hand toward his rectum in an effort to shove an item farther up into his rectum. The officers subsequently discovered a plastic bag containing assorted pills. The defendant later was charged with and convicted of tampering with evidence and illegal conveyance of a drug of abuse into a detention facility. The defendant appealed.

{¶ 33} On appeal, the defendant asserted, in part, that the state failed to present sufficient evidence to support his tampering with evidence conviction. He claimed that he concealed the pills in his rectum before the officers placed him in custody, and thus, at the time he concealed the pills, he did not know of an ongoing or likely investigation involving the pills. The appellate court disagreed. The court rejected the defendant's assertion that "because the pills were already

hidden inside [his] rectum when he was taken into custody by the probation officers for failing to report, he was not aware of any ongoing or likely investigation as it relates to the pills." *Id.* at ¶41. Instead, the court agreed with the state that the defendant committed the tampering offense not before the officers placed him in custody, but instead, he committed the offense "in the change-out room in the jail 'when [he] put his hand in and then over his rectal area in order to further conceal the apprehension of the drugs.'" *Id.* at ¶42. The court concluded that the record supported a finding that the defendant "attempted to further conceal the drugs hidden in his anal cavity while the officers were investigating whether [he] had conveyed drugs in the county jail." *Id.* at ¶43.

{¶ 34} In *State v. Wallace*, 12th Dist. Fayette No. CA2015-09-019, 2016-Ohio-4922, the court rejected the defendant's argument that the evidence failed to support a finding that he knew of an ongoing or likely investigation. In *Wallace*, an officer stopped the defendant's vehicle for speeding. Upon approaching the vehicle, the officer detected an odor of alcohol and saw a marijuana stem on the defendant's lap. The officer requested the defendant to exit the vehicle and conducted a pat-down search. The officer also asked the defendant whether he had "any weapons or anything else in the car that should not be there." *Id.* at ¶2. The defendant did not respond.

{¶ 35} During the stop, the officer learned that the defendant's driver's license had been suspended and that he lacked driving privileges. A second officer then arrived on the scene and saw the defendant place an item in his mouth that appeared to be a baggie. The officer ordered the defendant to open his mouth, but the defendant did not comply. Instead, he attempted to swallow the item and fled the scene. The officers pursued him and eventually apprehended him.

Next to the defendant, the officers found a saliva-covered bag that contained a white powder.

{¶ 36} The defendant subsequently was charged with cocaine possession and tampering with evidence. After his conviction, the defendant appealed. The defendant argued that the evidence was insufficient to support his tampering with evidence conviction. In particular, he claimed that the evidence failed to support a finding that he knew of an ongoing or likely investigation into his cocaine possession when he placed the baggie in his mouth. The appellate court disagreed. The court explained that

> although the investigation began as a routine traffic stop for speeding, it escalated to the discovery of a marijuana stem on [the defendant]'s lap, [the defendant]'s suspended driver's license and lack of driving privileges * * * which resulted in the need to arrest [the defendant] and have the vehicle towed. When [the defendant] put the baggie in his mouth and [the officer] asked him, 'what's in your mouth?' [the defendant] knew an investigation into his cocaine possession was in progress.

*Id.* at ¶16.

{¶ 37} The Eighth District Court of Appeals considered a similar set of circumstances in *State v. Sharp*, 8th Dist. Cuyahoga No. 103445, 2016-Ohio-2634. In *Sharp*, the officer stopped the defendant's vehicle for an expired registration. The officer subsequently learned that the plates were registered to a different vehicle. The officer asked the defendant for his driver's license and proof of insurance. The defendant responded that the vehicle did not belong to him. The officer also learned that the defendant's driver's license was under suspension. The officer then advised the defendant that he would be arrested due to driving under suspension and that the vehicle would be impounded.

{¶ 38} When the defendant exited the vehicle, the officer saw the defendant throw an item into his mouth. The officer asked the defendant what he had placed in his mouth, and the

defendant stated that it was a piece of paper. The officer told the defendant that the officer believed the defendant was attempting to hide or destroy some form of drugs. The officer ordered the defendant to open his mouth and found a white substance. The defendant subsequently was charged with tampering with evidence and drug possession.

{¶ 39} After his conviction, he appealed. He argued that the state did not present sufficient evidence to show that he knew a drug-related investigation was in progress or likely to be instituted. The defendant asserted that the officer had been investigating him for driving while under suspension and that his attempt to hide or destroy drugs did not impair evidence related to that investigation.

{¶ 40} The appellate court did not agree. The court explained: "[A]lthough the investigation began as a routine traffic stop due to an expired registration sticker, it escalated to the discovery of fictitious plates and [the defendant]'s driver's license, which resulted in the need to arrest [the defendant] and impound the vehicle." *Id.* at ¶21. The court stated that the defendant "would expect to be searched by police upon being placed under arrest." *Id.* at ¶22. The court thus believed that the evidence sufficiently showed that the defendant knew an investigation into his possession of drugs was likely at the time he placed the paper containing cocaine in his mouth. *Id.*

{¶ 41} In *State v. Walker*, 9th Dist. Summit No. 25744, 2011-Ohio-5779, the court considered whether an individual, who was on parole, tampered with evidence. In *Walker*, law enforcement officers saw the defendant carrying a backpack in an area where recent burglaries had occurred. One of the officers was familiar with the defendant and knew that he had prior arrests for burglary. The officers later observed the defendant and a group of others near the

back door of a house. When the group saw the officers approach, they quickly walked away. The officers believed that they had interrupted a burglary in process. After the officers stopped the defendant, they noted that he no longer had the backpack they previously saw him carrying. When the officers recovered the backpack, they found an unloaded weapon with the serial number removed. The officers subsequently arrested the defendant. He later was charged with and convicted of tampering with evidence, among other things.

{¶ 42} The defendant appealed his tampering with evidence conviction. He asserted that the state failed to present sufficient evidence that at the time he concealed the backpack, he knew that an official proceeding or investigation was in progress or likely to be instituted. The appellate court disagreed. The court noted that at the time of the incident, the defendant "was on parole," "had been informed of the rules he was required to follow while on parole," "was in violation of his parole at the time of the incident," "was directly informed of his violations," "failed to attend the hearing" regarding his parole violations, and "failed to communicate with his parole officer." *Id.* at ¶22. The court explained: "In light of the evidence that [the defendant] knew he was in violation of his parole and that he failed to appear at a court hearing on that violation, it is reasonable to infer that [the defendant] knew an official investigation '[wa]s about to be or likely to be instituted' when he was spotted by the officers." *Id.* The court additionally observed that the weapon inside the concealed backpack "could have been used in the investigation against him."[3] *Id.* The court thus affirmed the defendant's tampering with evidence conviction.

---

[3] The court did not, however, clarify whether the weapon could be used in the investigation into the parole violations or the burglaries.

{¶ 43} In *In re T.R.J.*, 11th Dist. Lake No. 2016-Ohio-7160, the court concluded that the evidence failed to show that a juvenile tampered with evidence. In *T.R.J.*, officers responded to a complaint that a group of juveniles had broken into a building. Upon arrival, the officers peered into the windows and saw T.R.J. "approach a garbage bag and manipulate the trash bag within the can." *Id.* at ¶6. The officers believed that the juvenile had placed something between the garbage can and the liner. When the juveniles exited the building, the officers arrested them for trespassing. One of the officers went inside the building and found a bag of marijuana in the garbage can.

{¶ 44} T.R.J. later was adjudicated delinquent for tampering with evidence. He appealed and asserted that the evidence failed to show that he concealed evidence while knowing of an ongoing investigation or likely investigation into his possession of marijuana. He argued that at the time he placed the marijuana into the garbage can, he did not have any knowledge of a likely investigation into his possession of marijuana. The appellate court agreed. The court noted that when the officers initially arrived on the scene, they were investigating an alleged breaking-and-entering and had no focus on marijuana use or possession until after they discovered the marijuana. The court thus reversed the juvenile's delinquency adjudication for tampering with evidence.

{¶ 45} In *State v. Moulder*, 2nd Dist. Greene No. 08-CA-108, 2009-Ohio-5871, the court determined that the evidence failed to support the defendant's tampering with evidence conviction. In that case, the officer arrested the defendant for speeding. After the defendant started the booking process, the arresting officer discovered a bag of crack cocaine in the backseat of the police cruiser. The defendant subsequently was charged with cocaine

possession, possession of criminal tools, and tampering with evidence.

{¶ 46} On appeal, the defendant argued, in part, that his tampering with evidence conviction was against the manifest weight of the evidence. The appellate court agreed. The court explained that at the time the defendant

> allegedly dropped the cocaine on the floorboard of the cruiser, the only "investigation" that had taken place was his alleged speeding violation. The cocaine could not have been used in proving the speeding violation. The routine administrative processing or "booking" of [the defendant] into the jail cannot be considered an "investigation" in the sense contemplated by the statute.

*Id.* at ¶7.

{¶ 47} In the case sub judice, after our review of the record we believe that the state presented sufficient evidence that would allow a reasonable fact-finder to conclude that at the time appellant attempted to dispose of the heroin in a trash can, appellant knew that an official investigation was in progress or was about to be or likely to be instituted. Just like the defendant in *Wallace*, at the time of appellant's alleged tampering with evidence, he was under arrest for violating parole. Additionally, appellant knew that the officers were investigating him for violating parole. Certainly, a parole investigation constitutes an official investigation. Thus, the evidence shows that at the time of appellant's alleged tampering, he knew that an official investigation was in progress, i.e., an investigation into his parole violation.

{¶ 48} Additionally, similar to the officers in *Cheesman*, *Wallace*, and *Sharp*, the officers in the case sub judice relayed their queries regarding whether appellant possessed any contraband before appellant's alleged tampering. In the case at bar, the officers went further than the officers in *Wallace* and *Sharp* and did not simply question whether he possessed contraband. Instead, the officers here, like the officers in *Cheesman*, warned appellant that he could be

charged with additional crimes if found to be carrying contraband into the jail. The officers thus gave appellant specific notice that he would be subjected to additional scrutiny at the jail to investigate whether he had, in fact, carried any contraband into the jail. Appellant thus had knowledge that a further investigation into whether he possessed contraband would likely occur at the jail.

{¶ 49} Moreover, although appellant's parole violation is not the same as the homicide considered in *Martin*, common sense nevertheless suggests that a parole violator who is under arrest will be subject to a search for contraband before being placed in a jail cell. Indeed, the prosecutor argued during closing argument to the jury: "Everybody should know it's commonsense that the jail isn't going to do just a little frisk and throw you back in there in general population without thoroughly searching you for drugs, or weapons, or any other kind of contraband that you shouldn't have in jail."

{¶ 50} Moreover, we believe that *Barry* is distinguishable from the case at bar. In *Barry*, the defendant had no indication, before the concealment, that law enforcement officers were hunting for any particular evidence or suspected the defendant of drug-related crimes. Instead, in *Barry*, the defendant concealed the drugs before she ever encountered law enforcement officers. *Barry* thus involved "preemptive measure[s] as opposed to a reaction to a likely investigation of a recent criminal act." *State v. Shaw*, 8th Dist. Cuyahoga No. 105111, 2017-Ohio-7404, 24. In contrast, in the case at bar, appellant attempted to dispose of the evidence after the officers arrested him for violating parole and after the officers warned him of the consequences of being caught with contraband in jail. His attempt to dispose of the evidence was a "reaction to a likely investigation of a * * * criminal act," and not a preemptive measure to

avoid detection. *Id.* Appellant knew the officers were investigating him for violating parole and knew that he likely would be subject to a more thorough search at the jail.

**{¶ 51}** We also find *T.R.J.* and *Moulder* distinguishable. In *T.R.J.*, the juvenile hid the drugs before the juvenile was aware that law enforcement officers were on the scene to investigate an alleged breaking-and-entering. Contrastingly, in the case at bar, appellant attempted to dispose of the drugs with knowledge that he was under arrest, being investigated for violating parole, and would be subject to additional search procedures at the jail.

**{¶ 52}** In *Moulder*, the defendant allegedly hid drugs while being transported to jail for a speeding violation. While appellant also hid drugs while being escorted to jail, we nevertheless find *Moulder* distinguishable. At the time the defendant concealed the drugs in *Moulder*, the officer, unlike the officers in the case at bar, had not repeatedly warned the defendant that he could be charged with additional crimes if he were found in possession of contraband. Thus, the officer in *Moulder* had not forewarned the defendant of the consequences of possessing contraband in jail. In the case at bar, however, the officers did forewarn appellant of the consequences of possessing contraband in jail. Furthermore, unlike appellant, the defendant in *Moulder* was not being investigated for violating parole.

**{¶ 53}** Finally, even if we accept for purposes of argument that appellant lacked knowledge that an investigation into his possession of or trafficking in heroin was likely at the time he attempted to dispose of it, he did not lack knowledge that the officers were investigating him for violating parole and that he would be searched for contraband more thoroughly once he

arrived at the jail.[4]   We therefore disagree with appellant that the state failed to present sufficient

evidence to establish that he knew an official investigation was in progress or was about to be or

likely to be instituted.

B

**{¶ 54}** The second element requires the state to establish that the defendant altered,

destroyed, concealed, or removed the potential evidence.   To the extent appellant contends that

the evidence fails to show that he altered, destroyed, concealed, or removed evidence, we do not

agree.   "'A defendant's act of removing contraband from his or her person can constitute

concealment or removal if done to avoid discovery.'"   *State v. Workman*, 2015-Ohio-5049, 52

N.E.3d 286 (3rd Dist.), ¶58, quoting *State v. Straley,* 2d Dist. Clark No. 2012–CA–34,

2013-Ohio-510, 2013 WL 596538, ¶9, citing State v. *Colquitt,* 2d Dist. Clark No. 98–CA–71,

1999 WL 812313, *5 (Sept. 24, 1999).   Thus, a "trier of fact could reasonably infer that placing

[an item] in a trash bin constitute[s] concealment or removal."   *Workman* at ¶58.

**{¶ 55}** In the case sub judice, appellant threw the heroin in a trash can.   A trier of fact

could reasonably conclude that appellant's attempt to dispose of the heroin shows that he altered,

destroyed, concealed, or removed the heroin.   We therefore disagree with appellant that the state

failed to present sufficient evidence to establish this element.

C

**{¶ 56}** The third element contained in the tampering with evidence statute "requires

proof that the defendant intended to impair the value or availability of evidence that related to an

---

[4] Our discussion of the third element, infra, will address whether the evidence sufficiently shows that appellant tampered with evidence related to that investigation or likely investigation.

existing or likely official investigation or proceeding." *Straley* at syllabus. In other words, "the evidence tampered with must have some relevance to an ongoing or likely investigation" of which the defendant has knowledge. *Straley* at ¶16.

{¶ 57} In *Straley*, the court determined that the evidence failed to show that the evidence tampered with related to the ongoing or likely investigation of which the defendant had knowledge. In *Straley*, law enforcement officers stopped the defendant's vehicle for erratic driving. Although the officers detected an odor of alcohol emanating from the defendant, they decided not to pursue an investigation. The officers would not, however, allow the defendant to drive home. As the officers tried to arrange a ride home for the defendant, the defendant announced that she needed to urinate. Afterwards, one of the officers walked to the area where the defendant had urinated and discovered a clear plastic bag covered with urine. The officer believed the bag contained crack cocaine. The officers subsequently arrested the defendant, and she later was charged with trafficking in drugs, possession of drugs, and tampering with evidence.

{¶ 58} Following her conviction on all counts, the defendant appealed. The court of appeals reversed the defendant's tampering with evidence conviction. The court determined that the evidence failed to show that the defendant acted with purpose to impair the value of evidence in an ongoing or likely investigation into her (1) driving under the influence of alcohol, or (2) public urination. The court concluded that the bag of drugs did not relate to a current or likely investigation.

{¶ 59} On further appeal, the Ohio Supreme Court agreed with the appellate court's decision. The court explained that "the evidence tampered with must have some relevance to an

ongoing or likely investigation to support a tampering charge." *Id.* at ¶16.   The court further

held that the evidence tampered with must relate to "the one that the defendant knows is ongoing

or is likely to be instituted."  *Id.*

{¶ 60} The court applied these rules to the defendant's conviction and determined that

the evidence failed "to suggest that the officers were conducting or likely to conduct an

investigation into trafficking or possession of cocaine when [the defendant] discarded the

baggie."  *Id.* at ¶19.   The court additionally pointed out that the "baggie of cocaine did not relate

to either an ongoing investigation of driving while under the influence of alcohol or driving

without a license and had no evidentiary value to a likely investigation of public urination."  *Id.*

The court thus concluded that the evidence failed to adequately support the defendant's

tampering with evidence conviction.

{¶ 61} In the case sub judice, appellant contends that *Straley* illustrates that he did not

tamper with evidence related to an ongoing or likely investigation because no evidence indicated

that he knew the officers were investigating or likely to investigate his possession of or

trafficking in heroin.   We believe, however, that appellant focuses too narrowly on the nature of

the investigation.   Instead, as we discussed above, the officers were investigating appellant for

violating parole.   They also warned appellant about the consequences of conveying contraband

into the jail and appellant knew–or was willfully ignorant, if not–that he would be further

scrutinized at the jail.   The evidence appellant allegedly tampered with (heroin) could have

relevance to the officers' parole-violation investigation or to whether he conveyed contraband

into the jail.    Therefore, the evidence shows that appellant knew he was under investigation for

violating parole, knew that conveying drugs into the jail constituted a crime, and could

reasonably expect to be more thoroughly searched for contraband at the jail. Thus, by disposing of the evidence immediately before entering the jail-house doors, appellant impaired the availability of that evidence for use in an ongoing parole-violation investigation or in a likely investigation into whether he had conveyed illegal drugs into a detention facility.

{¶ 62} Despite his knowledge and the officers' warnings, appellant attempted to dispose of heroin by throwing it in the trash can. This evidence adequately shows that appellant had a purpose to impair the use of the heroin as evidence. *Workman* at ¶59 ("disposing of an item in a trash bin demonstrates the requisite intent—'with purpose'—of impairing an item's availability as evidence in an investigation."). Additionally, even when a defendant's attempted concealment ultimately proves unsuccessful, as in the case sub judice, this failure "has no effect on a sufficiency-of-the-evidence analysis." *State v. Jackson,* 1st Dist. Hamilton No. C–140178, 2014-Ohio-5008, 2014 WL 5840033, ¶15. We therefore disagree with appellant that the state failed to present sufficient evidence to establish that he possessed a purpose to impair the potential evidence's availability or value in the proceeding or investigation of which he had knowledge.

{¶ 63} Based upon all of the circumstances in the case sub judice, we believe that the state presented sufficient evidence to support appellant's tampering with evidence conviction. For similar reasons, we do not believe that appellant's tampering with evidence conviction is against the manifest weight of the evidence. The case at bar is not one of those exceptional cases in which the evidence weighs heavily against conviction. Here, the state presented substantial competent, credible evidence upon which the jury could have concluded, beyond a reasonable doubt, that all of the essential elements of the offense had been established.

{¶ 64} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

III

{¶ 65} In his second assignment of error, appellant asserts that the state did not present sufficient evidence to support his possession of heroin and trafficking in heroin convictions, or alternatively, that the convictions are against the manifest weight of the evidence.

A

{¶ 66} Appellant first challenges his trafficking in heroin conviction. He contends that the officer's testimony that appellant informed the officers that he was delivering the heroin to "some guy in the Ville" fails to show that he knowingly sold or offered to sell heroin or that he prepared the heroin for an intended sale.

{¶ 67} R.C. 2925.03(A)(2) sets forth the offense of drug trafficking as charged in the indictment and states:

> No person shall knowingly * * *
> * * * *
> (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

As used in this statute, selling includes delivering, bartering, exchanging, transferring, or gifting. *See* R.C. 2925.01(A) (incorporating R.C. 3719.01 definitions) and 3719.01(AA) (defining "sale"). This definition is broader than the common dictionary definition of "sale." *State v. Adkins*, 80 Ohio App.3d 211, 221, 608 N.E.2d 1152, 1159 (4th Dist.1992); *accord* Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section 107:2 (3d ed.). "Ohio has adopted

a definition of 'sale' of controlled substances that is broad in scope, calculated to include all transfers of controlled substances regardless of the presence or absence of consideration therefor." *State v. Albritton*, 6th Dist. Wood No. WD–80–48, 1980 WL 351681, *6 (Dec. 26, 1980). Consequently, "[i]n a prosecution for offering to sell a controlled substance, the state is not required to prove that there was a sale or even that the controlled substance existed. A defendant may be convicted, even in the absence of a completed drug sale, if the defendant committed any element of drug trafficking incident to an aborted sale. * * * The term 'offer to sell' includes a person who offers to provide narcotics as a link in the chain of supply, and whether the person intends to act as agent for the seller or buyer is immaterial." Drug trafficking—Elements, Baldwin's Oh. Prac.Crim. L., Section 107:2 (3d ed.) (footnotes omitted); *accord State v. Harris*, 89 Ohio App.3d 147, 148–49, 623 N.E.2d 1240, 1241 (8th Dist.1993) (upholding defendant's drug trafficking conviction when she retrieved black sock from her person and handed to third person who ultimately delivered sock containing controlled substance to confidential informant). "This essentially means that a person who knowingly transfers or offers to transfer narcotics is guilty of selling or offering to sell narcotics within the meaning of R.C. 2925.03." *State v. Latina*, 13 Ohio App.3d 182, 187, 468 N.E.2d 1139, 1146 (8th Dist.1984).

{¶ 68} In *State v. Curry*, 10th Dist. Franklin No. 99AP–862, 2000 WL 675110 (May 25, 2000), the defendant asserted that the state failed to present sufficient evidence to support his drug trafficking conviction and that his conviction was against the manifest weight of the evidence when the state failed to present direct evidence that the defendant received money in exchange for drugs. In *Curry*, an undercover narcotics officer obtained drugs from the

defendant via a third party. The officer met with the third party in an undercover capacity and informed her that he wished to purchase cocaine. The officer gave her $1,300. The third party stated that she needed to contact her supplier. A short time later, the third party met the defendant in a parking lot. The defendant entered the third party's vehicle carrying a red and black Doritos chip bag, but left her vehicle without this bag. Shortly thereafter, the third party presented the Doritos bag to the undercover officer. Inside the bag was one ounce of cocaine. The defendant subsequently was charged and convicted of drug trafficking. On appeal, the defendant asserted that his conviction could not stand because, inter alia, no one observed money exchanged.

**{¶ 69}** The appellate court, however, rejected the defendant's arguments and explained:

> We find unpersuasive defendant's contention that the evidence failed to show a "sale" where the state's witnesses did not observe money being exchanged between Pelfrey and defendant. R.C. 2925.01(A) "incorporates the R.C. 3719.01(EE) definition of 'sale' into the drug statutes," a definition that is "broader than the common dictionary definition of 'sale.'" State v. Adkins (1992), 80 Ohio App.3d 211, 221, 608 N.E.2d 1152. R.C. 3719.01(AA) defines "[s]ale" to include "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee."

Id. at *4.

**{¶ 70}** We likewise reject appellant's argument that the evidence fails to support his trafficking conviction simply because the officers did not witness appellant transfer heroin to anyone in exchange for cash. Instead, the word "sale," as used in R.C. 2925.03(A)(1), is broadly defined to include delivery, barter, exchange, transfer, or gift. The officers testified that appellant admitted he intended to deliver the heroin to an individual "in the Ville." Appellant

thus indicated that he was transporting the heroin with knowledge that he would deliver it to another individual. As we already stated, "deliver" satisfies the drug-trafficking statute's definition of "sale." Thus, because appellant admitted that he transported the heroin with the intention to deliver it to a third person, the evidence more than adequately shows that appellant transported heroin while knowing that it was intended for "sale." Therefore, sufficient evidence supports appellant's R.C. 2925.03(A)(2) trafficking in heroin conviction. For similar reasons, we do not believe that his conviction is against the manifest weight of the evidence.

B

POSSESSION

**{¶ 71}** Appellant next argues that the state's evidence fails to show that he knowingly possessed heroin. He points out that before the officers placed him into the vehicle to transport him to jail, the officers searched him, yet they did not locate any heroin on his person. Appellant contends that the discovery of heroin in the trash can after he stepped out of the vehicle fails to support a finding that he knowingly possessed the heroin.

**{¶ 72}** R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 *Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998); accord* State v. Corson, 4th Dist. Pickaway No. 15CA4, 2015–Ohio–5332, ¶13.

{¶ 73} Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("To constitute possession, it is sufficient that the defendant has constructive possession * * *."); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. "'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.'" *State v. Kingsland*, 177 Ohio App.3d 655, 2008–Ohio–4148, 895 N.E.2d 633, ¶13 (4th Dist.), quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004–Ohio–5747, 2004 WL 2428439, ¶39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Hankerson*, syllabus; *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, 2009 WL 3236206, ¶19. For constructive possession to exist, the state must show that the defendant was conscious of the object's presence. *Hankerson*, 70 Ohio St.2d at 91, 434 N.E.2d 1362; *Kingsland* at ¶13; *accord State v. Huckleberry*, Scioto App. No. 07CA3142, 2008–Ohio–1007, 2008 WL 623342, ¶34; *State v. Harrington*, Scioto App. No. 05CA3038, 2006–Ohio–4388, 2006 WL 2457218, ¶15. Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *E.g., Brown* at ¶19; *see, e.g., State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus (stating that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value").

{¶ 74} In the case sub judice, we believe that the state presented sufficient evidence to establish that appellant knowingly possessed heroin. One of appellant's parole officers, Matthew Stuntebeck, testified that appellant appeared fidgety upon his arrival at the jail. Stuntebeck explained that appellant appeared to have "something in his hand and kind of had his

hands in the back of his pants." Stuntebeck then observed appellant drop something in the trash can. Stuntebeck retrieved the item from the trash can. Stuntebeck stated that the trash can was completely empty, except for a "really thin smashed Pall Mall cigarette package" that contained a powdery substance wrapped inside a small plastic bag. When Stuntebeck asked appellant about the item, appellant indicated that it was "dope." Stuntebeck further inquired whether it was heroin, and appellant responded, "Yeah, something like that." This evidence, if believed, more than amply shows that appellant possessed the heroin immediately before discarding it in the trash can and that he knew he possessed the heroin before discarding it. Consequently, sufficient evidence supports his possession of heroin conviction. For these same reasons, we do not believe that his conviction is against the manifest weight of the evidence.

{¶ 75} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.